Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Attorney for Plaintiff and the Proposed Class

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**PORTLAND DIVISION**

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated, | |
| Plaintiff | Case No. 3:25-cv-752 |
| vs. | |
| LIFEWAVE, INC. | |
| and | FIRST AMENDED CLASS ACTION COMPLAINT TCPA (47 U.S.C. § 227) DEMAND FOR JURY TRIAL |
| RENATE LUNDBERG | |
| Defendants. | |

**FIRST AMENDED CLASS ACTION COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

**Preliminary Statement**

1.      "Telemarketing calls are intrusive. A great many people object to these calls,

which interfere with their lives, tie up their phone lines, and cause confusion and disruption on

phone records. Faced with growing public criticism of abusive telephone marketing practices,

Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105

Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response

to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2.     "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C*., 925 F.3d 643, 649-50 (4th Cir. 2019).

3.     The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that LifeWave violated the TCPA by making telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written

consent, by making telemarketing calls without the accurate provision of Caller ID Name (CNAM).

## Parties

4.      Plaintiff Leon Weingrad has a 503- telephone number associated with this District, in Clackamas County.

5.      Defendant LifeWave, Inc. is a Georgia corporation with its headquarters and principal place of business in Utah that sells "technology [that] elevates the flow of your body's innate energy, fostering overall wellness and an active lifestyle."

6.      Defendant Renate Lundberg is a LifeWave "brand partner" and self-described "Founder, CEO, CFO, and Chief Fun Officer," for "SPD at Lifewave" and is either an individual adult resident of Oregon and/or Florida who was involved in the placing of some of the calls and text messages at issue.

## Jurisdiction & Venue

7.      The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

8.      The Court has specific personal jurisdiction over Defendants because Defendants directed their conduct into Oregon by texting individuals with Oregon telephone numbers, including those, like Plaintiff, possessing 503- area code numbers, which are associated with this District. Moreover, in sending the subject text messages, Defendants used Oregon area codes to send the text messages.

9.      Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls to the Plaintiff were sent into this District.

Amended Complaint                           3

**The Telephone Consumer Protection Act**

10.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do Not Call Registry

11.    The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

12.    A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

13.    The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

The TCPA Also Requires Telemarketers to Transmit Caller Identification Information Including the Telemarketer's Name.

14. The TCPA requires any "person or entity that engages in telemarketing" to "transmit caller identification information." 47 C.F.R. § 64.1601(e).

15. The relevant regulation defines "caller identification information" as "either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer." 47 C.F.R. § 64.1601(e)(1).

16. A violation of this subsection of the TCPA is enforceable under the private right of action provided for under 47 U.S.C. § 227(c)(5)'s private right of action. *Dobronski v. Selectquote Ins. Servs.*, No. 2:23-CV-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025).

## **Factual Allegations**

17.    Plaintiff Weingrad is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

18.    Plaintiff's telephone number, (503) XXX-XXX, is a non-commercial telephone number not associated with any business.

19.    Plaintiff's telephone number has been listed on the National Do Not Call Registry for over a year prior to the calls at issue.

20.    Mr. Weingrad uses the number for personal, residential, and household reasons.

21.    Mr. Weingrad does not use the number for business reasons or business use.

22.    The number is a residential telephone line because it is not assigned to a telephone exchange service for businesses.

23.    The number is assigned to a residential cellular telephone service.

24.    Plaintiff Weingrad never consented to receive calls from Defendant LifeWave or Defendant Lundberg.

25.    Plaintiff Weingrad never did business with Defendant LifeWave or Defendant Lundberg.

26.     Despite that fact, the Plaintiff received at least 7 text messages from the Defendants' number 503-379-9719 between July 13, 2024 and present.

27.     Upon information and belief, Defendant operates a multi-level-marketing scheme through purported independent contractors, whom it terms "brand partners."

28.     Defendant Lundberg is one such brand partner.

29.     In fact, Defendant Lundberg is a particularly high-ranking brand partner and states that she is the "Founder, CEO, CFO, and Chief Fun Officer," for "SPD at Lifewave," and in the messages variously describes herself as part of various LifeWave counsels, including being the "Senior Presidential Director Advisory Council," and part of the "Lifewave North America Field Leadership."

30.     As part of its scheme, and to market its products, Defendant LifeWave provides its brand partners, including Defendant Lundberg, with marketing materials and the means through which to market LifeWave products, including a platform called "Boards" through which LifeWave trains its brand partners on compliance and marketing success strategies.

31.     Moreover, upon information and belief, LifeWave operates a full service marketing and outreach system, including text message marketing system, that allows its brand partners to send text messages to individuals on the brand partners' contact lists, using LifeWave owned and operated system, called LifeWave InTouch, which allows its brand partners to send text messages, as outlined through the descriptions on the App Stores for this app.

32.     Indeed, LifeWave's own official InTouch guide provides pre-written texts and message content and tells users to choose to send "by email or text," even walking them through "send a video via Text to yourself" to see how alerts work.

33.     The text messages all came from the 503-379-9719 number. Counsel for the Plaintiff has access to "dip" the Caller ID database of the calling carrier to ascertain the CNAM information to ascertain (1) whether caller name delivery (CNAM) is available with the Defendant's calling carrier, and (2) whether such CNAM information contained the name of the telemarketer. The results of that dip is as follows:

| Number | Date of Query | CNAM Available? | CNAM Result | Carrier |
|---|---|---|---|---|
| 5033799719 | 02/05/2025 | Y | MCMINNVILLE OR | TWILIO |

34.     As the aforementioned chart shows, the CNAM transmitted by the Defendants' ultimate telephone carrier, Twilio, provided CNAM functionality, but the CNAM functionality transmitted a geographic location, and not the Defendants' name or telemarketer's name.

35.     Twilio provides its customers and any resellers the ability to set the CNAM result accurately to reflect their own name as desired, but if the customer does not elect such a CNAM, Twilio's default CNAM customer setting is to transmit the geographic location of the telephone exchange for the calling telephone number, and not the caller's name, as occurred here.

36.     The first message on July 13, 2024 read: "Hi Joe, A Very Special Event: David Schmidt, founder of Lifewave will be LIVE for our team only! Dr, Karen Kan M.D. Acupuncturist will interview David who will share life-changing benefits of our Light Therapy Technology. David will give us a glimpse into Lifewave's exciting future. David has special surprises for all of us who are attending our convention in Oct! Go to zoom.us Zoom ID 846 492 80493 Passcode healthy We have Limited Webinar Seats. Be early! https://us02web.zoom.us/j/84649280493?pwd=VRj88Yu6DNj0S2YApa45DQ85xsJ3Nf.1 To hear Dr. Karen Kan M.D. and David Schmidt recorded calls please Register/Log

In to your https://connect4success.life team website. See you Tuesday 7/16 at 6 p.m. pacific Warmly, Renate Lundberg Senior Presidential Director LifeWave Advisory Council Member USA/Canada/Mexico"

37.     Most recently, on April 26, 2025, the Plaintiff received the following text message, "Hi Joe, Thank you for being part of our Lifewave family. We are here to help you reach your health goals. Alavida Skin Care: Save $33 See and feel the difference in your skin when using our unique botanical hydrating and rejuvenating Day and Night lotion, our Copper Peptide infused Eye Treatment combined with our Light Therapy Alavida patches. Sign into your Lifewave back office, Click on Promotions to take advantage of this 15% off Special available until tomorrow Sun 4/27.

https://files.constantcontact.com/5dd7c363701/dac1ae00-ed05-419d-b797-b5e01bdbfda7.pdf?rdr=true What better gift for Mother and Father's Day than Healthy Glowing Skin. Visit our miraclereadyinfo.com website to learn more about our life-changing technology and see Before and After photos. Feel free to reach out any time. Warmly, Renate Lundberg Senior Presidential Director Advisory Council Member USA Canada Mexico."

38.     A full outline of the messages Plaintiff received is attached herein as Exhibit A.

39.     The links in the text messages attached herein as Exhibit A led to various LiveWave branded promotional and other materials, attached herein as Exhibit B.

Amended Complaint                          8

40.     The messages were sent by Defendant Lundberg to advertise, promote, and encourage the sale and purchase of LifeWave's products and services, from which both Defendants would benefit from the sale.

41.     Upon information and belief, LifeWave also had some degree of involvement in the initiation and sending of the messages at issue, including the transmission of such messages using its app, but the Plaintiff is currently unaware of the precise technical nature of how that app operates or sends messages based on a user's commands, nor does Plaintiff know in whose name the 503-379-9719 number is actually, legally registered.

42.     However, a subpoena to Twilio would obtain such information and shed light on the Defendants' precise involvement in the messages.

43.     Defendant LifeWave ratified Lundberg's conduct by accepting the lead, purchase of goods, and brand partner referrals generated as a result of Lundberg's illegal telemarketing conduct for some of the calls at issue.

44.     Indeed, Defendant LifeWave further ratified Lundberg's conduct by providing Lundberg with marketing materials, attached herein as Exhibit B, through LifeWave links that led to LifeWave marketing materials, resources, and multimedia that promoted LifeWave's goods and services using resources it created, as well as permitting Lundberg to direct text recipients to LifeWave's Zoom webinars.

45.     For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

46.    In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

47.    The FCC has instructed that sellers such as LifeWave may not avoid liability by outsourcing telemarketing to third parties or multi-level-marketing brand partners, such as Lundberg:

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."
*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (cleaned up).

48.    Indeed, other multi-level marketing companies have been held liable for the conduct of their affiliates' and brand partners' telemarketing conduct. *See, e.g.*, *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1114 (9th Cir. 2022); *see generally FTC v. 8 Figure Dream Lifestyle LLC*, No. 8:19-cv-01165-DOC-KES, ECF No. 114 (C.D. Cal. Sept. 9, 2020) (enjoining multi-level-marketing company from "initiating, causing others to initiate, or Assisting Others in initiating" robocalls and from "violating, causing others to violate, or Assisting Others in violating" the FTC's telemarketing regulations).

49.    In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

50.     LifeWave is liable for any telemarketing calls placed by Lundberg using LifeWave's name to generate customers for the mutual benefit of Lundberg and LifeWave, including the Plaintiff.

51.     LifeWave's entire business model operates on the multi-level-marketing premise of hiring "brand partners" that sell its goods or services, and its business opportunity, to other potential customers, to vet potential clients, and work up deals by taking advantage of an outsourced sales process, including collecting personal information so that LifeWave could ultimately sell its products and services.

52.     To do so, LifeWave encourages and provides material support to "brand partners" like Lundberg to orchestrate an *en masse* telemarketing campaigns using LifeWave's own marketing materials, and then sell those individuals LifeWave's goods and services.

53.     LifeWave controlled the day-to-day activities of Lundberg by providing the material support necessary to make the text messages at issue, including by providing messaging templates, its own URL links, and its own marketing resources and creative content at those links.

54.     LifeWave also could have prohibited Lundberg from generating leads based on calls placed to numbers on the Do Not Call Registry.

55.     It did not.

56.     Finally, LifeWave could have terminated Lundberg once it learned of Lundberg's illegal marketing conduct.

57.     It did not.

58.     A reasonable seller would investigate into the reasons why their marketer (or "brand partner") would be calling numbers using highly illegal calls to numbers on the Do Not Call Registry.

59.     It did not.

60.     LifeWave hired Lundberg without a proper investigation and did not terminate her when they were informed of Lundberg's illegal calling conduct.

61.     As such, they knowingly ratified Lundberg's conduct.

62.     LifeWave accepted the Plaintiff's lead and then utilized it for a benefit by continuing to promote its services to him.

63.     The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

64.     Defendant Lundberg may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*: "[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*." 47 U.S.C. § 217 (emphasis added).

65.     Lundberg personally directed the TCPA-violative conduct at issue because her name was in the messages and LifeWave's investigation has confirmed that Lundberg sent the subject messages to her list of contacts.

66.     Moreover, Lundberg personally took responsibility for her calling conduct by assisting LifeWave in its defense of this case, including providing information for LifeWave's counsel, which was then provided to Plaintiff.

67.     The foregoing facts demonstrate that Lundberg had direct, personal knowledge of and participation in the conduct and course of conduct complained of which violated the TCPA.

68.     Under the TCPA, as confirmed by the Supreme Court, text messages are "calls" for the purposes of the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 153 (2016).

69.     The calls were unwanted.

70.     Prior to the call, the Plaintiff never had any dealings with, interacted with, requested calls from, or wanted, calls from Defendants, and the Plaintiff has no need, want, or desire for Defendants' products or services.

71.     In fact, the Plaintiff is not "Joe."

72.     The aforementioned calls to the Plaintiff were unwanted.

73.     The calls were nonconsensual encounters.

74.     The calls were made in an attempt to sell the Plaintiff Lifewave's energy technology, life care, and skincare products.

75.     The Plaintiff does not and did not want such products.

76.     Plaintiff's privacy has been violated by the above-described telemarketing calls.

77.     Plaintiff never provided his consent or requested the calls.

78.     Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, their storage space and network bandwidth was used, they were charged for the calls and their privacy was improperly invaded.

79.     Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class, including when Plaintiff and other class members were working, driving, and performing other critical tasks.

## Class Action Statement

80.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if

fully stated herein.

81.    Plaintiff brings this action on behalf of himself and the following classes (the

"Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3) and Oregon Local

Rule 23-2.

82.    Plaintiff proposes the following Class definitions, subject to amendment as

appropriate:

**National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call or text message from or on behalf of Defendants encouraging the purchase of LifeWave's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

**Telemarketing Caller ID Class:** All persons within the United States to whom: (1) Defendants (or a third-party acting on behalf of Defendants) sent (2) two or more telemarketing calls or text messages in a 12-month period, (3) without the transmission of caller identification information that included either CPN or ANI and the Defendant's or telemarketer's name, (4) within the four years prior to the filing of the Complaint.

83.    Plaintiff is a member of and will fairly and adequately represent and protect the

interests of the Classes as he has no interests that conflict with any of the Class members.

84.    Excluded from the Classes are counsel, Defendants, and any entities in which

Defendants have a controlling interest, the Defendants' agents and employees, any judge to

whom this action is assigned, and any member of such judge's staff and immediate family.

85.    Plaintiff and all members of the Classes have been harmed by the acts of

Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time,

the use of their telephone power and network bandwidth, and the intrusion on their telephone that

occupied it from receiving legitimate communications.

86.     This Class Action Complaint seeks injunctive relief and money damages.

87.     The Classes as defined above, are identifiable through Defendants' dialer records, other phone records, and phone number databases.

88.     Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

89.     The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

90.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

91.     There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

92.     There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

a.     Whether Defendants made multiple calls to Plaintiff and members of the National Do Not Call Registry Class;

b.     the corresponding degrees of liability as between, among, and within, the Defendants;

c.     whether Defendants transmitted CPN or ANI and its name in the caller ID information, when provided as an option by their telephone carrier, to Plaintiff and members of the Telemarketing Caller ID Class;

d.     Whether Defendants' conduct constitutes a violation of the TCPA; and

e.      Whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

93.     Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

94.     Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

95.     Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendants and/or any of their agents or vendors.

96.     The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

97.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## FIRST CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)**

98.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

99.     The foregoing acts and omissions of Defendants and/or any of their affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendants' behalf, constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227. by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

100.    Defendants' violations were negligent, willful, or knowing.

101.    As a result of Defendants' and/or any of their affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 and in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

102.    Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or other persons or entities which discovery may reveal may have been acting on Defendants' behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

**SECOND CAUSE OF ACTION**

**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Telemarketing Caller ID Class)**

103.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

104.    It is a violation of the TCPA to make a telemarketing call without the transmission of caller identification information including either a CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer. 47 C.F.R. § 64.1601(e)(1).

105.    Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telemarketing calls to be initiated to Plaintiff and members of the Telemarketing Caller ID Class in a 12-month period, without transmitting the name of the telemarketer, despite such option for transmission of accurate CNAM information being available by its carrier.

106.    These violations were willful or knowing.

107.    As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA's telemarketing Caller ID transmission requirement, Plaintiff and members of the Telemarketing Caller ID are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

108.    Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.    Injunctive relief prohibiting Defendants from calling telephone numbers advertising their goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future, or without the transmission of Caller ID Name in the future;

B.      That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

C.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

D.      Attorneys' fees and costs, as permitted by law; and

E.      Such other relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

> Plaintiff,
> By Counsel,

Dated: August 27, 2025

> s/Andrew Roman Perrong
> Andrew Roman Perrong, OSB No. 243320
> a@perronglaw.com
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, PA 19038
> 215-225-5529
> Lead Attorney for Plaintiff and the Proposed Class

> s/Anthony Paronich
> Anthony Paronich, Mass. BBO No. 678437
> (*Pro Hac Vice* Forthcoming)
> anthony@paronichlaw.com
> Paronich Law, P.C.
> 350 Lincoln Street, Suite 2400
> Hingham, MA 02043
> 617-485-0018
> Attorney for Plaintiff and the Proposed Class