Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Attorney for Plaintiff and the Proposed Class

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated,

        Plaintiff

vs.

LifeWave, Inc.

        Defendant.

Case No. 3:25-cv-752

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

TCPA (47 U.S.C. § 227)
DEMAND FOR JURY TRIAL

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## I.   TABLE OF CONTENTS

**II.   Table of Authorities** ............................................................................................... ii

**III.   Counter Local Rule 7-1(a)(1) Statement** ............................................................... 1

**IV.   Introduction** .............................................................................................................. 1

**V.   Factual Background** .................................................................................................. 1

**VI.   Legal Standard** ......................................................................................................... 2

**VII.   Argument** ................................................................................................................. 4

A.   Plaintiff sufficiently alleges a case for specific personal jurisdiction over LifeWave because he alleges that LifeWave directed its conduct into Oregon on a vicarious liability theory for an Oregon brand partner texting an Oregon number. .................................. 4

B.   Plaintiff alleges more than one "telephone solicitation." .................................................. 7

C.   There exists a private right of action for the TCPA's Caller ID regulations. Subsequent decisions have called Griffin into question. ................................................................. 9

D.   Plaintiff has pled a plausible case for LifeWave's direct or vicarious liability for the conduct alleged. ........................................................................................................... 17

E.   Plaintiff sufficiently pleads willful damages. .................................................................. 25

F.   Discovery should not be stayed. ..................................................................................... 27

**VIII. Conclusion** .............................................................................................................. 29

## II.   TABLE OF AUTHORITIES

**Cases**

*Abante Rooter & Plumbing, Inc. v. Alarm.com, Inc.*, 2018 U.S. Dist. LEXIS 132078 (N.D. Cal. 2018) .............................................................................................................................. 22

*Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094 (D. Ariz. 2024) .......................................... 8

*Abrahamian v. loanDepot.com LLC*, No. 2:23-cv-00728, 2024 WL 1092442 (D. Ariz. Mar. 13, 2024) .............................................................................................................................. 8

*Aldapa v. Fowler Packing Co., Inc.*, Case No. 11:5-CV-00420-DAD (SAB), 2016 WL 6124216 (E.D. Cal. Oct. 20, 2016) ..................................................................................................... 29

*Alexander v. Sandoval*, 532 U.S. 275 (2001) ......................................................................... 12, 16

*Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817 (N.D. Ill. 2016) ............... 20, 21, 22

Opposition to Motion to Dismiss

*Armstrong v. Investor's Bus. Daily, Inc.*, No. CV182134MWFJPRX, 2019 WL 2895621 (C.D. Cal. Mar. 12, 2019) ........................................................................................................ 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................ 2, 3

*Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167 (N.D. Cal. 2010) ................................................................................................................................... 3

*Barton v. Bright Solar Marketing LLC*, No. 3:25-CV-05310-DGE, 2025 WL 2880136 (W.D. Wash. Oct. 9, 2025) ................................................................................................................ 10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................. 2

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988) ...................................................... 11

*Bradley v. DentalPlans.com*, 617 F. Supp. 3d 326 (D. Md. 2022) ........................................... 6

*Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 U.S. Dist. LEXIS 37310 (N.D. Ill. Mar. 19, 2013) ................................................................................................................................. 25

*Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147 (N.D. Ill. 2014) .......................................... 25

*Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012) ............................................. 8

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016) .................................. 2

*Dobronski v. CHW Grp., Inc.*, 2025 WL 2426370 (E.D. Mich. Aug. 21, 2025) ..................... 10

*Dobronski v. Juliasangel Mktg., LLC*, No. 2:24-CV-12379-TGB-APP, 2025 WL 2659265 (E.D. Mich. Sept. 17, 2025) ........................................................................................................ 10

*Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373 (E.D. Mich. 2025) ................ passim

*Friedman v. Torchmark Corp.*, No. 3:12-cv-02837, 2013 WL 4102201 (S.D. Cal. Aug. 13, 2013 ............................................................................................................................................ 9

*FTC v. 8 Figure Dream Lifestyle LLC*, No. 8:19-cv-01165-DOC-KES (C.D. Cal. Sept. 9, 2020) ............................................................................................................................................ 19

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) ......................................... 2

*Giovaniello v. ALM Media, LLC*, 726 F.3d 106 (2d Cir. 2013) ............................................. 28

*Golan v. FreeEats.com, Inc.*, 930 F.3d 950 (8th Cir. 2019) ................................................... 23

*Griffin v. Am.-Amicable Life Ins. Co. of Texas*, No. 6:24-CV-00243-MC, 2024 WL 4333373 (D. Or. Sept. 27, 2024). ..................................................................................................... passim

iii

*Havassy v. Keller Williams Realty, Inc.*, No. CV 21-4608, 2024 WL 1640984 (E.D. Pa. Apr. 16, 2024) ............................................................................................................................. 5

*Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068 (9th Cir. 2019) ...................... 18, 21

*In re PFA Ins. Mktg. Litig.*, 696 F. Supp. 3d 822 (N.D. Cal. 2022) ............................................ 20

*Ind. State Police Pension Trust v. Chrysler LLC*, 556 U.S. 960 (2009) ........................................ 27

*Keifer v. HOSOPO Corp.*, No. 18-cv-1353-CAB, 2018 WL 5295011 (S.D. Cal. Oct. 25, 2018) 26

*Keim v. ADF Midatlantic, LLC,* 2015 WL 11713593 (S.D. Fl. 2015) ......................................... 22

*Koeller v. Seemplicity Security Inc.*, No. 4:24-CV-00528-SRC, 2024 WL 4751306 (E.D. Mo. Nov. 12, 2024) .................................................................................................................... 25

*Komaiko v. Baker Techs., Inc.*, No. 19-CV-03795-DMR, 2020 WL 1915884 (N.D. Cal. Apr. 20, 2020) ............................................................................................................................. 5

*Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292 (D. Nev. 2014) ................................. 18

*Lathrop v. Uber Techs., Inc.*, No. 14-CV-05678-JST, 2016 WL 97511 (N.D. Cal. Jan. 8, 2016) 27

*Levitt v. Fax.com*, No. 05-949, 2007 WL 3169078 (D. Md. May 25, 2007) ............................... 28

*Levitt v. Yelp! Inc.*, 765 F.3d 1123 (9th Cir. 2014) ...................................................................... 2

*Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005) ............................................................ 29

*Lucas v. Telemarketer Calling From (407) 476-5670 & Other Tel. Numbers*, No. 1:12-CV-630, 2014 WL 1119594 (S.D. Ohio Mar. 20, 2014) .......................................................................... 24

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008) .............................. 2

*Maryland v. Universal Elections, Inc.*, 729 F.3d 370 (4th Cir. 2013) .......................................... 24

*Mason v. Spring EQ LLC*, No. 5:24-cv-01833, 2024 WL 5424385 (C.D. Cal. Nov. 27, 2024) .... 7

*Matthews v. Mid City Cannabis Club, Inc.*, No. CV 20-07841 PA (JPRx), 2021 WL 1567496, at *2 (C.D. Cal. Mar. 2, 2021) ................................................................................................ 2

*Mauer v. Am. Intercontinental Univ., Inc.*, 2016 U.S. Dist. LEXIS 120451 (N.D. Ill. Sep. 7, 2016) ............................................................................................................................. 24

*Moser v. Health Ins. Innovations, Inc.*, No. 3:17-CV-1127-WQH-KSC, 2018 WL 325112 (S.D. Cal. Jan. 5, 2018) ...................................................................................................... 5

iv

*n re Dialing Servs., LLC*, 29 F.C.C. Rcd. 5537 (2014) .............................................................. 24

*Newell v. JR Cap., LLC*, -- F. Supp.3d --, 2025 WL 2004706 (E.D. Pa. July 16, 2025).. 10, 12, 17

*Newell v. Strategic Admin. Grp., Inc.*, No. 2:20-CV-00967-JDW, 2020 WL 12770854 (E.D. Pa. May 6, 2020)...................................................................................................................... 5

*Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182 (9th Cir. 2002) ................................ 20

*Orea v. Nielsen Audio, Inc.*, 2015 WL 1885936 (N.D. Cal. Apr. 24, 2015) ............................... 9

*Ott v. Mortg. Invs. Corp. of Ohio*, 65 F. Supp. 3d 1046 (D. Or. 2014) ................................. 5, 25

*Pascal v. Concentra, Inc.*, 2019 U.S. Dist. LEXIS 185193 (N.D. Cal. Oct. 24, 2019)............... 29

*Pasco v. Protus IP Solutions, Inc.,* 826 F. Supp. 2d 825 (D. Md. 2011)...................................... 28

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006) ........................................................ 3

*Pontrelli v. MonaVie, Inc.*, No. 13-CV-4649-WJM-MF, 2014 WL 4105417 (D.N.J. Aug. 19, 2014) ...................................................................................................................................... 19

*Radvansky v. Kendo Holdings, Inc.*, 744 F. Supp. 3d 1314 (N.D. Ga. 2024).............................. 13

*Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090 (N.D. Cal. 2015). ....................................... 9

*Saleh v. Crunch, Ltd. Liab. Co.*, No. 17-62416-Civ-COOKE/HUNT, 2018 U.S. Dist. LEXIS 36764 (S.D. Fla. Feb. 28, 2018)............................................................................................. 27

*Sanaah v. Howell*, 2009 Civil Action No. 08-cv-02117-REB-KLM, U.S. Dist. LEXIS 35260 (D. Colo. Apr. 9, 2009) ....................................................................................................... 28

*Siringi v. Parkway Fam. Mazda/Kia*, No. CV H-23-1499, 2023 WL 7130867 (S.D. Tex. Oct. 30, 2023) ........................................................................................................................... 16

*Wakefield v. ViSalus, Inc.*, 51 F.4th 1109 (9th Cir. 2022) ........................................................ 18

*Whittaker v. Freeway Ins. Servs. Am., LLC*, No. CV-22-8042-PCT-DGC, 2023 WL 167040 (D. Ariz. Jan. 12, 2023).................................................................................................................. 8

*Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970 (9th Cir. 2010) ............................................ 3

*Wick v. Twilio Inc.*, No. C16-00914RSL, 2017 WL 2964855 (W.D. Wash. July 12, 2017).......... 5

*Worsham v. Travel Options, Inc.*, No. 14-2749, 2016 WL 4592373 (D. Md. Sept. 2, 2016) 10, 11, 14, 16

Opposition to Motion to Dismiss

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) . 4

**Statutes**

15 U.S.C. § 6153 ................................................................................................ 12, 15, 16

28 U.S.C. § 1658(a) .................................................................................................... 28

47 C.F.R. § 64.1200(f) ........................................................................................ passim

47 C.F.R. § 64.1601(e) ........................................................................................ passim

47 U.S.C. § 227(a)(4) ................................................................................................... 8

47 U.S.C. § 227(c) .............................................................................................. passim

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 2

Fed. R. Civ. P. 12(f) ..................................................................................................... 3

Fed. R. Civ. P. 8(a) ...................................................................................................... 2

**Other Authorities**

*In re DISH Network, LLC*, 28 FCC Rcd. 6583 (2013) ........................................... 23, 24

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2003 TCPA Order"), CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014 ........................ 13, 16

Opposition to Motion to Dismiss

### III.    COUNTER LOCAL RULE 7-1(A)(1) STATEMENT

Counsel for Defendant did *not* meet and confer with counsel for Plaintiff regarding this instant Motion to Dismiss. When asked about why Defendant's counsel did not do so in derogation of the Local Rules, counsel stated that there was no need to because the parties already met and conferred once with respect to the previous motion that was denied as moot. However, the renewed motion points out omitted exhibits, as well as makes additional and different vicarious liability arguments not present in the original motion. This warrants denial of the motion independently for failure to comply with the Rules.

### IV.    INTRODUCTION

Defendant's LifeWave, Inc's (LifeWave or Defendant's) motion is full of questionable legal theories, rank speculation, and false assertions, but the simple facts of this case are as follows: the Plaintiff received multiple telemarketing text messages to his cell phone offering to sell Defendant LifeWave's products and services from LifeWave's brand partner, Renate Lundberg, including LifeWave eye creams, energy enhancers, and a "Y-AGE System." As such, the Plaintiff has plainly pled a case for violations of the TCPA's Do Not Call Registry provisions. And, recent authority has confirmed that there exists a private right of action for the Plaintiff's Caller ID claims. Defendant's motion should therefore be denied in its entirety.

### V.    FACTUAL BACKGROUND

The Plaintiff filed the instant Amended Complaint[1] alleging violations of the Telephone Consumer Protection Act for unsolicited text messages which Defendant placed to his number on

---

[1] Defendant takes issue that Exhibits A and B were erroneously omitted from the re-docketed Amended Complaint. These exhibits were originally in the Plaintiff's original Amended Complaint, ECF No. 15, which the Court struck, before the parties stipulated to re-filed the

1

Opposition to Motion to Dismiss

the National Do Not Call Registry. The Defendant has filed a Motion to Dismiss, or in the alternative, to strike certain claims and class allegations. This response follows.

## VI.     LEGAL STANDARD

"The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6)." *Matthews v. Mid City Cannabis Club, Inc.*, No. CV 20-07841 PA (JPRx), 2021 WL 1567496, at *2 (C.D. Cal. Mar. 2, 2021). Indeed, as it noted, "[t]he Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The purpose of Rule 8(a)(2) is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In assessing a Rule 12(b)(6) motion to dismiss, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

To overcome such a challenge, a plaintiff's "factual allegations in the complaint must suggest that the claim has at least a plausible chance of success." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016) "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a

---

Amended Complaint, which was erroneously refiled without the exhibits, ECF No. 20. Those exhibits are re-attached as Exhibits A and B to this Opposition.

Opposition to Motion to Dismiss

probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss a complaint for lack of personal jurisdiction. When a defendant challenges personal jurisdiction through a Rule 12(b)(2) motion, the plaintiff bears the burden of demonstrating that the exercise of personal jurisdiction over the defendant is proper. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). However, the plaintiff must make only a *prima facie* showing of jurisdictional facts to withstand the motion. *Id.* In ruling on such a motion, the Court applies the same standard as in other motions, construing all facts in the light favorable to the nonmoving party and resolving all disputed facts in that party's favor. *Id.*

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). The function of a motion made under this rule is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). "While a Rule 12(f) motion provides the means to excise improper materials from pleadings, such motions are generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010). With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party and deny the motion if there are any doubts. *Id.*

Opposition to Motion to Dismiss

# VII.    ARGUMENT

A.    *Plaintiff sufficiently alleges a case for specific personal jurisdiction over LifeWave because he alleges that LifeWave directed its conduct into Oregon on a vicarious liability theory for an Oregon brand partner texting an Oregon number.*

Defendant LifeWave, in essence, adopts in its motion the classic "I didn't do it" defense, but styles it instead as an attack on this Court's exercise of subject matter and personal jurisdiction over the Defendant because the Defendant did not text Plaintiff, but rather the texts were sent by Oregon brand partner Renate Lundberg. But such doubt as to specific personal jurisdiction arising from this relationship, including insofar as it is intertwined with the question of vicarious liability, is more properly the subject of a jury trial or at the very least a motion for summary judgment. Notwithstanding the Complaint's plain factual allegations that Lundberg is a high-level Oregon Brand Partner that sent the subject messages, jurisdiction is appropriate as against LifeWave because (1) the text messages sold LifeWave products, (2) contained links to LifeWave marketing materials, (3) advertised that LifeWave's "founder" and CEO would attend a live Zoom Meeting, and (4) thanked the Plaintiff for "being part of our Lifewave family," and thus were sent by Lundberg as part of her relationship with LifeWave for LifeWave and Lundberg's mutual benefit. This is not to mention the allegations that Lundberg is an Oregon resident, the telephone number at issue is *also* an Oregon number and is the Defendants' number. At the pleadings stage, there simply exist too many factual questions as to the parties' relationship to show that jurisdiction is improper. To the contrary, Plaintiff has addressed Defendant's evidence with evidence and allegations of his own showing jurisdiction is proper.

When a plaintiff's claims sound in tort, the Ninth Circuit applies a purposeful direction "effects" test to determine if specific personal jurisdiction exists. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). In TCPA actions in the

Opposition to Motion to Dismiss

Ninth Circuit and beyond, this Court and others have uniformly held that the action of sending a call or text message to a telephone number with an area code associated with the forum state is sufficient for the exercise of specific personal jurisdiction and satisfies this test. *E.g.*, *Ott v. Mortg. Invs. Corp. of Ohio*, 65 F. Supp. 3d 1046, 1059 (D. Or. 2014); *Komaiko v. Baker Techs., Inc.*, No. 19-CV-03795-DMR, 2020 WL 1915884, at *6 (N.D. Cal. Apr. 20, 2020) (citing cases); *Moser v. Health Ins. Innovations, Inc.*, No. 3:17-CV-1127-WQH-KSC, 2018 WL 325112, at *4 (S.D. Cal. Jan. 5, 2018) (citing cases throughout the country for the proposition that "The effects test is satisfied by a plaintiff's uncontroverted allegation that a defendant violated the TCPA by calling a phone number with a forum state area code.").

Courts nationwide, including in the Ninth Circuit, have expressed skepticism at Rule 12(b)(2) TCPA challenges based on purported denials of liability at the pleadings stage, such as based on disputes as to the companies' relationship and the extent to which vicarious liability is appropriate. *See, e.g.*, *Wick v. Twilio Inc.*, No. C16-00914RSL, 2017 WL 2964855, at *4 (W.D. Wash. July 12, 2017) (allowing claim against call vendor to proceed when third party initiated the call at issue); *Newell v. Strategic Admin. Grp., Inc.*, No. 2:20-CV-00967-JDW, 2020 WL 12770854, at *1 (E.D. Pa. May 6, 2020); *Abramson v. Agentra, LLC*, Civ. A. No. 18-615, 2018 WL 6617819, at * 4 (W.D. Pa. Dec. 18, 2018). As the *Newell* Court observed, citing *Abramson*:

> The Court also concludes that the maintenance of the suit in Pennsylvania does not offend traditional notions of fair play. SAG authorized a vendor to sell its policies without geographic restriction. It was foreseeable that SAG's calls might violate the TCPA in any jurisdiction to which a call was placed. Moreover, the relative burdens of litigating favor forcing a company that makes a call to litigate in the district where the call was made, rather than forcing the consumer that receives the call to litigate in the district where the seller happens to reside. . . . Because the TCPA could impose vicarious liability on SAG for a call made to Pennsylvania, SAG has the requisite minimum contacts with Pennsylvania to give rise to personal jurisdiction.

*Id.* The decision in *Havassy v. Keller Williams Realty, Inc.*, No. CV 21-4608, 2024 WL 1640984, at *6–*7 (E.D. Pa. Apr. 16, 2024), is particularly noteworthy because, just as here, the

defendant attempted to argue the lack personal jurisdiction couched in the denial of an agency

relationship. As the Court observed in *Havassy*:

> WRI denies any direct connection between it and Hewitt and Houston, arguing that they work with an independent market center. KWRI does not require independent realtors to participate in any KWRI training. KWRI claims Hewitt and Houston, as independent realtors, communicate with customers for their own benefit. These contentions are belied by the control KWRI dictates in the licensing agreement.

> That KWRI employees did not make the phone calls does not mean KWRI had no connection to them. Houston and Hewitt, as prescribed in KWRI's guidelines, used KWRI's name when they called potential customers and identified themselves as associated with "Keller Williams." KWRI controls all advertising and marketing that the Keller Williams Bethlehem office and its agents, Houston and Hewitt, perform using KWRI's name. Using the Keller Williams logo and the Keller Williams domain in their email addresses enhances KWRI's brand and consequently its profits. . . . Hence, we conclude that KWRI's conduct is related to Havassy's claims.

Other Courts are in agreement, holding that dismissal on jurisdictional grounds is

inappropriate when the Plaintiff makes specific factual allegations establishing agency and

jurisdiction based on the underlying agency relationship. *See Bradley v. DentalPlans.com*, 617 F.

Supp. 3d 326, 340 (D. Md. 2022). This is the case here, where Plaintiff alleges that the LifeWave

controlled the advertising and marketing of its brand partners, including Defendant Lundberg,

including by operating a "full service marketing and outreach system, including text message

marketing system, that allows its brand partners to send text messages to individuals on the brand

partners' contact lists, using LifeWave owned and operated system, called LifeWave InTouch,

which allows its brand partners to send text messages, as outlined through the descriptions on the

App Stores for this app," including, like in *Havassy*, a guide that "provides pre-written texts and

message content." These allegations plausibly show that LifeWave had the right to control the

manner and means of Defendant Lundberg's marketing campaign and would support the

imposition of specific personal jurisdiction.

6

B.     *Plaintiff alleges more than one "telephone solicitation."*

The TCPA prohibits making a "telephone solicitation" to a number on the National Do Not Call Registry. And the relevant regulation, 47 C.F.R. § 64.1200(f)(15), defines a "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." The selected text messages outlined in the Complaint were plainly made to encourage the called party to purchase and make use of the Defendant's products. As they are referenced in the Complaint, the Plaintiff has attached herein as Exhibit A[2] a complete outline of each of the sets of text messages he received from the Defendant, which have been condensed for clarity, as some of the messages were broken up into multiple messages when they were sent because of their length. Attached herein as Exhibit B[3] are copies of some of the promotional materials linked in the subject text messages, including a flyer offering a "FREE ENERGY ENHANCER" when "YOU BUY LIFEWAVE'S Y-AGE SYSTEM," as well as a Black Friday sale offering 30% off "some of your favorite products when you buy them together!" Yet another flyer offers 15% off eye cream.

Defendant's "threshold issue" of personal registration on the Do Not Call Registry is a red herring. The TCPA cannot require that an individual later seeking to sue under the Do Not Call Registry provisions of the TCPA needs to personally register their number on the Do Not Call Registry because that fact would be impossible to prove, as the FTC is neither authorized to nor collects such information. It follows that proving such information cannot be an element of a TCPA claim. *Mason v. Spring EQ LLC*, No. 5:24-cv-01833, 2024 WL 5424385, at *3 (C.D. Cal. Nov. 27, 2024) ("On its face, the statutory language appears to protect phone numbers until they

---

[2] As explained above, Exhibit A was erroneously omitted from the re-filed Amended Complaint as a result of a docketing error.
[3] Some of the links lead to PDF files, which are the contents of Exhibit B.

Opposition to Motion to Dismiss

are removed regardless of personal registration."). Indeed, DNC registrations "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Abrahamian v. loanDepot.com LLC*, No. 2:23-cv-00728, 2024 WL 1092442, at *2 (D. Ariz. Mar. 13, 2024) (quoting 47 C.F.R. § 64.1200(c)(2)).

As such, even a cursory review of the messages at issue confirm that each of them plainly meet the statutory definition of sending a telephone solicitation to a number on the Do Not Call Registry, including because they link to files which plainly advertise and encourage the purchase of specific LifeWave goods and services, including a "Y-AGE System" and eye creams. "The purpose of a text or call determines whether it qualifies as a telephone solicitation, and courts use 'a measure of common sense' to determine its purpose." *Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094, 1102 (D. Ariz. 2024) (quoting *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)). Drawing all reasonable inferences in Plaintiff's favor, as this Court must, these allegations support a reasonable inference that the messages were sent "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 U.S.C. § 227(a)(4); *see also Abboud*, 731 F. Supp. 3d at 1102 ("Neither the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context." (quoting *Chesbro*, 705 F.3d at 918)); *see also Whittaker v. Freeway Ins. Servs. Am., LLC*, No. CV-22-8042-PCT-DGC, 2023 WL 167040, at *2 (D. Ariz. Jan. 12, 2023) ("Except for encouraging the purchase of its products, it is hard to imagine why an insurance company would contact a consumer not already insured by it and state that it looked forward to saving the consumer money, as did the recorded message in this case.")

The two cases cited by the Defendant are distinguishable. Defendant states that *Reardon v. Uber Techs., Inc.*, concerned a communication that related to the "opportunity to sell goods."

Opposition to Motion to Dismiss

To put it mildly, that is a gross misrepresentation of *Reardon*. In that case, the Northern District of California held that the text messages weren't *selling* anything: all they were doing were encouraging drivers to sign up for a job opportunity with Uber, which fell in line with a long line of cases holding that pure job offers are not "telephone solicitations" because they don't seek out the recipient to purchase *anything*. 115 F. Supp. 3d 1090, 1094 (N.D. Cal. 2015). That is plainly not the case here, where the messages specifically sought to encourage the purchase of *specific products* which were on sale. To recast that as an "opportunity to sell goods" (or, perhaps more accurately, re-sell goods that require a monetary outlay to purchase) is, putting it charitably, an overly creative interpretation of the statute's plain text.

Similarly, *Friedman v. Torchmark Corp.*, dealt with the plaintiff attending a recruiting webinar for a *job*. No. 3:12-cv-02837, 2013 WL 4102201, at *6 (S.D. Cal. Aug. 13, 2013). And in *Friedman*, the Court stated that it must "determine whether the intent of the call is to offer property, goods, or services for sale during the call or in the future." The messages at issue here clearly and unmistakably demonstrate that intent. The distinction here is clear: calls asking the called party to purchase something (as here) are telephone solicitations; calls gratuitously seeking to obtain the listener's labor, blood, or time are not. *Orea v. Nielsen Audio, Inc.*, 2015 WL 1885936, at *3 (N.D. Cal. Apr. 24, 2015). Because they sought to encourage the Plaintiff to purchase LifeWave products and invest in LifeWave's multi-level-marketing scheme, the text messages the Plaintiff received were telephone solicitations.

C.    *There exists a private right of action for the TCPA's Caller ID regulations. Subsequent decisions have called* Griffin *into question.*

As LifeWave correctly points out, last year, this Court considered *Griffin v. Am.- Amicable Life Ins. Co. of Texas*, where this Court concluded that 47 C.F.R. § 64.1601(e) does not create a private right of action under 47 U.S.C. § 227(c)(5). No. 6:24-CV-00243-MC, 2024 WL

Opposition to Motion to Dismiss

4333373, at *5 (D. Or. Sept. 27, 2024). At least *five* subsequent court decisions from *three* jurisdictions, including Washington, have confirmed that this Court's prior reasoning in *Griffin* was incorrect, including because that decision relied on fundamentally faulty reasoning employed by the District of Maryland in *Worsham v. Travel Options, Inc.*, No. 14-2749, 2016 WL 4592373, at *4-5 (D. Md. Sept. 2, 2016). *Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373, 380 (E.D. Mich. 2025) (holding 47 C.F.R. § 64.1601(e) confers a private right of action under Section 227(c) of the TCPA); *Newell v. JR Cap., LLC*, -- F. Supp.3d --, 2025 WL 2004706, at *2 (E.D. Pa. July 16, 2025); *Dobronski v. CHW Grp., Inc.*, 2025 WL 2426370, at *7 (E.D. Mich. Aug. 21, 2025); *Dobronski v. Juliasangel Mktg., LLC*, No. 2:24-CV-12379-TGB-APP, 2025 WL 2659265, at *11 (E.D. Mich. Sept. 17, 2025); *Barton v. Bright Solar Marketing LLC*, No. 3:25-CV-05310-DGE, 2025 WL 2880136, at *5 (W.D. Wash. Oct. 9, 2025).

The issue with this Court's ruling in *Griffin* lies in the fact that it did not consider under which section of the TCPA the subject regulation, 47 C.F.R. § 64.1601(e), was promulgated, nor did it reach its conclusion independently. Instead of tussling with the statute and analyzing it, it simply rested on persuasive authority from other courts which themselves relied on faulty and underdeveloped reasoning and did not engage in extensive analysis as to the precise genesis of this right of action, which is 47 U.S.C. § 227(c). As best Plaintiff can discern, *Dobronski* was the first court to engage in such analysis, which the *Newell* and subsequent courts credited, including this Court's sister in the Western District of Washington.

As a codified federal regulation dealing with "telemarketing," and with explicit references to the definitions promulgated under the TCPA in 1991 in 47 C.F.R. § 64.1200(f)(13), this particular regulation must have been promulgated under *some* part of the TCPA. "It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited

Opposition to Motion to Dismiss

to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208

(1988). In this regard, only a handful of subsections of the TCPA allow for the promulgation of

regulations:

> • § 227(b)(2) authorizes the FCC to implement requirements that relate to the use of prerecorded voices and automatic telephone dialing systems;
> • § 227(c) authorizes the FCC to promulgate rules relating to the "need to protect residential telephone subscribers' privacy rights";
> • § 227(d)(1)–(3) allow regulations relating to technical and procedural standards related to fax machines, automatic telephone dialing systems, and "systems that are used to transmit any artificial or prerecorded voice message";
> • § 227(e)(3) provides for regulations relating to misleading or inaccurate caller ID; and
> • § 227(i) allows for the FCC to promulgate regulations to streamline information sharing with the FCC related to violations

*Dobronski*, 773 F. Supp. 3d at 376. As the Court observed in *Dobronski*, all but § 227(c)

are quickly eliminated as not even remotely applicable to the statutory provision here. The

statutory provision at issue here could not have been promulgated pursuant to Section 227(d),

because that Section relates only to fax machines and automatic telephone dialing systems, not to

telemarketing calls in general, just as Section 227(b), which is inapplicable for identical reasons.

Section 227(e)(3), though it deals with Caller ID, was enacted *after* § 64.1601(e), so that's out.

And, finally, the transmission of accurate caller ID name has nothing to do with information

sharing with the FCC relating to violations. *Id.*

The problem with *Griffin* is that it places too much reliance on the District of Maryland's

holding in *Worsham*. And, though that decision eliminated Section 227(c) of the TCPA as a

possible source of promulgation authority on questionable logic, *Worsham* did not consider what

alternative section the subject regulation was promulgated under. *Worsham* impermissibly

presumed either that the language in the regulation was promulgated under a different subsection

without explanation, or no subsection at all, which is an impossibility since language in a

regulation cannot "conjure up a private cause of action that has not been authorized by Congress.

Opposition to Motion to Dismiss

Agencies may play the sorcerer's apprentice but not the sorcerer himself." *Alexander v.*

*Sandoval*, 532 U.S. 275, 291 (2001). As the *Newell* Court explained:

> In my view, *Worsham* misunderstands the structure of the statute. In § 227(c), Congress explicitly delegated to the FCC the authority to evaluate different methods and procedures to protect privacy rights – including network technologies – and issue appropriate regulations. If § 64.1601(e) is promulgated as a "method or procedure" to "protect residential telephone subscribers' privacy rights," it fits under § 227(c) and a private cause of action exists. And the administrative record establishes that the FCC viewed caller ID as a "network technology" that Congress *required* the FCC to evaluate as a method and procedure to protect consumer privacy under § 227(c). Thus, caller ID fits into § 227(c), even if (c) does not mandate that the FCC adopt technological methods and authorizes non-technological methods and procedures as well. *See also Dobronski*, 773 F.Supp.3d 373 (concluding, on a motion for reconsideration, that § 64.1601(e) was promulgated under § 227(c), and rejecting *Worsham*'s technology-focused arguments).

> Further, § 227(d) only applies to telemarketing made using specific technologies – fax machines, automatic telephone dialing systems, and artificial and prerecorded voice messages – whereas § 64.1601(e) applies to a broader range of telemarketing calls, including traditional manually dialed telemarketing calls. The Third Circuit has cautioned that "our starting point [in regulatory interpretation] is to attempt reconciliation of seemingly discordant statutes and regulations." *LaVallee Northside Civic Ass'n v. Virgin Islands Coastal Zone Mgmt. Comm'n*, 866 F.2d 616, 623 (3d Cir. 1989). It is difficult to discern how § 64.1601(e) could have been lawfully promulgated under § 227(d) without exceeding the FCC's delegated authority. Section 64.1601(e) thus fits best under § 227(c), not (d).

> *Worsham* does not grapple with these issues, but attempts instead to have § 64.1601(e) straddle two sections of the statute, an outcome for which I can discern no legal authority. The regulation fits comfortably within § 227(c), which supports the existence of a private right of action.

*Newell*, 2025 WL 2004706, at *5. Both the decisions in *Newell* and *Dobronski* are

supported by the legislative history under which the instant subsection was enacted. The subject

regulation here, 47 C.F.R. § 64.1601(e), was promulgated in 2003 under rulemaking Congress

explicitly authorized when it passed the Do Not Call Implementation Act of 2003, 15 U.S.C. §

6153 ("2003 Act"), which related to *consumer privacy*, the mainstay of Section 227(c). Pursuant

to that mandate, the FCC began a rulemaking proceeding that expressly sought comment on

whether "network technologies have been developed over the last decade," and which ultimately

Opposition to Motion to Dismiss

resulted in an order promulgating the implementation and incorporation of the instant caller ID legislative rule, as well as Do Not Call Registry rules. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2003 TCPA Order"), CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14118. As the FCC explained in that 2003 TCPA Order rulemaking proceeding, "The new rules will also require all companies conducting telemarketing to transmit caller identification (caller ID) information, when available, and prohibits them from blocking such information." *Id.* at 14017. "[T]he 2003 FCC [TCPA O]rder applies to section 227(c). . . . Therefore, Radvansky may bring a case." *Radvansky v. Kendo Holdings, Inc.*, 744 F. Supp. 3d 1314, 1321, 1321 n.3, n.4 (N.D. Ga. 2024). The 2003 TCPA Order references Section 227(c) no fewer than 54 times and only one other section, Section 227(d), only *once*, in the context of a 1997 regulation requiring fax broadcasters to print their information on fax messages. *Id.* at 14134. It references no other section of the TCPA as authority for the regulations it promulgated.

As such, the FCC *explicitly tied* the Caller ID requirements at issue here to the TCPA's private right of action in Section 227(c), reasoning that "Caller ID requirements will improve the ability of consumers *to identify and enforce* do-not-call rights against telemarketers. . . . Consumers are frustrated by the failure of many telemarketers to transmit caller ID information, which, under certain circumstances, *makes it difficult for consumers to enforce* the TCPA." *Id.* at 14068, 14118 (emphasis added). It concluded that, pursuant to its authority *under Section 227(c) of the TCPA*, "the caller ID requirements at 47 C.F.R. § 64.1601(e) will go into effect on January 29, 2004." *Id.* at 14143. There can be no question, therefore, that the FCC promulgated the instant regulation under its authority under Section 227(c) of the TCPA, which required the FCC to promulgate privacy regulations.

As the *Dobronski* Court observed in commenting on the history of the TCPA, and

Opposition to Motion to Dismiss

distinguishing *Worsham*:

> [T]he regulatory history further buttresses its view. In an early rulemaking proceeding under the TCPA, the FCC noted that the TCPA directed it to consider a "number of alternatives for residential telephone subscribers to avoid receiving unwanted telephone solicitations ... includ[ing] a national database, network technologies, special directory markings, time of day restrictions, and industry-based or company-specific do-not-call lists." *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, 8758 (1992). There can be little doubt that that direction came from § 227(c). *See* 47 U.S.C. § 227(c)(1)(A) (directing the FCC to "compare and evaluate alternative methods and procedures [including the use of electronic databases, telephone network technologies, special directory markings, industry-based or company-specific "do not call" systems, and any other alternative]"). Then, in evaluating those alternatives, the FCC identified the lack of widespread caller ID as a barrier to cost-effective network technology implementation. *In the Matter of Rules*, 7 F.C.C. Rcd. at 8761.
>
> In 2003, the FCC referred back to the discussion from above, and then it: expressly sought comment on whether "network technologies have been developed over the last decade," specifically asked "whether to require telemarketers to transmit the name and telephone number of the calling party," assessed caller ID's effectiveness and efficiency in supporting consumer privacy rights, and "determined to require all sellers and telemarketers to transmit caller ID information." *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14118–21 (2003). It elsewhere concluded that "Caller ID requirements will improve the ability of consumers to identify and enforce do-not-call rights against telemarketers." *Id.* at 14068. The agency record thus suggests that caller ID requirements are a telephone network technology or other alternative that the FCC required in an attempt to help consumers enforce their privacy rights against telemarketers. . . . .
>
> In *Travel Options*, the court determined that § 64.1601(e) was promulgated to enforce § 227(d), which lacks a private right of action, because § 64.1601(e)'s caller ID requirement resembles "technical and procedural standards." In doing so, the court noted that the outcome was "not clear." To be sure, § 227(d) is titled "Technical and Procedural Standards," and it is not unreasonable to think that caller ID is "technical" or "procedural." But slotting § 64.1601(e) into § 227(d) on that basis is a little odd, given that § 64.1601(e) focuses on caller ID requirements for all telemarketing calls, and § 227(d) by its own terms governs only fax machines, automatic telephone dialing systems, and artificial or prerecorded voice systems. . . . By contrast, § 227(c) focuses on privacy rights generally and also spoke in terms of "methods and procedures" as well as "telephone network technologies" as mechanisms to protect subscriber privacy rights. . . . But it does not follow that the FCC could not promulgate technology-focused rules (like a caller-ID requirement) under § 227(c)'s "telephone network technologies" language merely because it could also protect subscriber privacy rights in other, non-technological ways. . . . And it is not intuitive why the fact that a rule directly supports § 227(c)'s goals by employing a network technology and "will improve the ability of consumers to identify and enforce do-not-call rights against telemarketers" bolsters the notion that § 64.1601(e) was not promulgated under the statute's subsection focused on protecting privacy rights. The Court sees no textual basis to carve from regulations that "protect" privacy rights those that merely

Opposition to Motion to Dismiss

"support" consumers' ability to enforce their rights—i.e., privacy rights are protected in part because wrongdoers are prohibited from hiding behind anonymity. At bottom, subsection 227(c) lets the FCC make rules to protect privacy rights and lets consumers sue when telemarketers violate those rules; § 64.1601(e) is a rule that helps protect privacy rights. *Travel Options's* influential inference seems to run uphill. . . . The other cases add little because they largely rely on *Travel Options* or on each other. . . . Those cases provided little analysis beyond that performed in *Travel Options*.

*Dobronski*, 773 F. Supp. 3d at 377–78.

The Defendant's argument must also fail because, in the 2003 Act, at 15 U.S.C. § 6153, Congress *explicitly* delegated authority to the FCC to promulgate regulations relating to the newly-created National Do Not Call Registry "under the [TCPA]," and the FCC did so by initiating a rulemaking proceeding under subsection (c), the only appropriate subsection dealing with "consumer privacy." *Dobronski*, 773 F. Supp. 3d at 377. The header of Section 1601 addresses "privacy restrictions." Critically, *the FCC also promulgated Section 1601 in the same Order as Section 64.1200(c)*, as outlined above. As *Dobronski* counsels, "That places § 64.1601(e) in the heartland of § 227(c), and thus supports the conclusion that the former was prescribed under the latter and benefits from § 227(c)(5)'s private right of action."

Nor is Section 227(c) of the TCPA limited only to regulations regarding the Do Not Call Registry, but also encompasses other regulations protecting consumer privacy, some of which date back to the TCPA's 1991 enactment, including calling hours restrictions and company-specific do-not-call rules. It is evident that, like those rules, the instant Caller ID regulations further the goals of protecting consumer privacy by, *inter alia*, empowering consumers to lodge do not call requests with specific, identifiable companies. A review of 47 U.S.C. § 227(c)(1)(D) confirms that Congress explicitly contemplated and authorized the FCC to "consider whether there is a need for *additional Commission authority* to further restrict telephone solicitations, including those calls exempted under subsection (a)(3) of this section, and, if such a finding is

Opposition to Motion to Dismiss

made and supported by the record, *propose specific restrictions to the Congress*." In other words, no part of 47 U.S.C. § 227(c) is limited to the Do Not Call Registry, as incorrectly presumed by this Court in *Griffin*, relying on that same incorrect assumption in *Worsham*.

Given that the 2003 TCPA Order was the *very same Order* that established the National Do Not Call Registry in Section 64.1200(c), it would be incongruous to hold that it created a private right of action for the DNC requirements but at the same time failed to create them for the caller ID requirements in Section 64.1601(e). And under the 2003 Congressional mandate, the FCC promulgated the instant regulation, 47 C.F.R. § 64.1601(e), pursuant to its authority *under* the TCPA, and pursuant to the *explicit authority* Congress in 2003 gave the FCC to conduct rulemaking *"under"* the TCPA, not just with respect to the Do Not Call Registry, as Defendant claims, but the other consumer privacy rulemaking Congress empowered the FCC to promulgate. 15 U.S.C. § 6153; s*ee also Siringi v. Parkway Fam. Mazda/Kia*, No. CV H-23-1499, 2023 WL 7130867, at *2 (S.D. Tex. Oct. 30, 2023) ("The Federal Communications Commission promulgated 47 C.F.R. § 64.1200 under its authority to implement the Telephone Consumer Protection Act."). Reading the 2003 Act as empowering regulations *under the TCPA's Section 227(c)* fits with how statutes, amendments, and administrative rulemaking works–the authorizing statute does not become the base statute or amendment, nor does the authorized rule. *See Alexander*, 532 U.S. at 286, 291 (explaining genesis of a right of action). And it is the plain meaning evident from the text.

There is simply no other statutory subsection "under the TCPA" upon which Congress could direct the FCC to promulgate the Caller ID regulations it ordered the FCC implement (including to align with the FTC), the entire purpose of which is to permit consumers to *lodge their objections against unsolicited telemarketing calls*. There exists a private right of action for

16

Opposition to Motion to Dismiss

violations of 47 C.F.R. § 64.1601(e) (as with 64.1200(c) and (d)), as Congress intended under 47

U.S.C. 227(c)(5). Nor should the class claims for the Telemarketing Caller ID Class be stricken,

either. Defendant's entire basis for striking the putative Caller ID Class rests solely on its faulty

contention that the Caller ID Class is allegedly unrecognized and lacks a legitable cause of

action. If this Court finds that there is a cause of action, it should not strike the corresponding

class claims. In light of five subsequent, well-reasoned authorities that persuasively and

thoughtfully grapple with both the statutory text, promulgation authority, and legislative history,

this Court should reverse its holding in *Griffin* and hold, just as in *Newell*, the *Dobronski* cases,

and *Barton*, that there exists a private right of action for violations of the subject regulations.

D.    *Plaintiff has pled a plausible case for LifeWave's direct or vicarious liability for the conduct alleged.*

Mr. Weingrad's allegations are straightforward and plain, but they are not legal

conclusions. He alleges the facts – that LifeWave itself directed the means and manner of its

brand partners' marketing strategy, including Defendant Lundberg's, and that LifeWave sent the

messages, using its systems, Defendant Lundberg drafted. This control included, but was not

limited to, providing the marketing materials themselves, hosting those materials on its website,

operating a marketing and outreach system, including a text message marketing system, for the

benefit of its brand partners', and providing brand partners pre-written text messages and

message content. (Am. Compl. ¶ 30-32). The Plaintiff has pled a dual-marketing arrangement in

which Defendant Lundberg sent the messages for LifeWave and her mutual benefit. (Am.

Compl. ¶ 40). Additionally, the Plaintiff has pled, in detail, LiveWave's involvement and control

of the conduct, including the *very transmission of the text messages themselves*, with the

infrastructure and app it provides its brand partners, which would be probative of direct liability.

(Am. Compl. ¶ 41). Not only that, but the Plaintiff has also pled, in the alternative, how

Opposition to Motion to Dismiss

LifeWave ratified Lundberg's conduct, as well as facts indictive of at least apparent authority, including by providing, and hosting, LifeWave marketing materials, resources, and multimedia that promoted LifeWave's goods and services. (Am. Compl. ¶ 43-44).

These allegations, as well as the evidence showing that the links on the text messages lead to the Defendant's very own marketing materials, show that the Defendant sent or otherwise controlled the messages at issue, including by directing and/or permitting its "brand partners," including Lundberg, to send them. As such, even assuming, *arguendo*, that the messages were drafted by Defendant Lundberg, those allegations are not inconsistent with the allegation that LifeWave itself sent the messages at issue using its app infrastructure that it provides its brand partners like Defendant Lundburg. The endgame is this: the Plaintiff has plausibly alleged a theory of direct liability against Defendant because the aforementioned facts demonstrate that the Defendant sent the text messages.

As articulated above when addressing jurisdiction, Plaintiff has also pled sufficient facts to infer vicarious liability under any one of the three commonly accepted agency theories. In a Ninth Circuit TCPA case, courts look to the Restatement of Agency for the criteria of liability. *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1072–73 (9th Cir. 2019). These include actual authority, apparent authority, and ratification. *Id.* "Although the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that a[ ] [common law] agency relationship existed." *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014).

Courts in the Ninth Circuit have also held multi-level marketing companies, like LifeWave, liable for the TCPA violations of their minions. *See, e.g.*, *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1114 (9th Cir. 2022); *see generally FTC v. 8 Figure Dream Lifestyle LLC*, No.

Opposition to Motion to Dismiss

8:19-cv-01165-DOC-KES, ECF No. 114 (C.D. Cal. Sept. 9, 2020). Courts hold similarly in other

consumer protection contexts. *See, e.g.*, *Pontrelli v. MonaVie, Inc.*, No. 13-CV-4649-WJM-MF,

2014 WL 4105417, at *4 (D.N.J. Aug. 19, 2014) (holding multi-level marketing company

vicariously liable for fraudulent misrepresentations made by its distributors). *Pontrelli*'s

reasoning is instructive, holding that, because distributors must first sign up for MonaVie's

program to use its trademark and sell its products, just as alleged here, this demonstrates

"consent and authorization to have the Distributors act on their behalf." *Id.* Moreover, just as

here, "the fact that the Defendants provide clear policies and procedures for the Distributors to

follow establishes that MonaVie controls and directs the acts of its Distributors." *Id.*

 This Court's decision in *Griffin* is also instructive on agency in a similar situation as to

here. There, this Court held that the plaintiff plausibly alleged an agency relationship where each

individual who called "explicitly stated they were calling . . . to sell Defendant's services."

*Griffin*, 2024 WL 4333373, at *4. With similar, if not fewer, facts than those pled here, this

Court plausibly inferred "that Defendant controlled the manner and means of the calls such that

the callers had Defendant's actual authority." *Id.* Despite pleading facts based on independent

research, including LifeWave's provision of marketing materials and an app, the Plaintiff here is

not required to allege even that, for "[p]laintiffs at this stage in the litigation do not have

visibility into Defendant's operations to be able to marshal detailed evidence of the relationship

between Defendant and those who physically placed the calls." *Id.* The Plaintiff does not

precisely know the contours of how LifeWave's MLM scheme operates, but as *Griffin* has held,

he is not required to plead that. The use of a Defendant's trade name, trademark, and service

marks for use pursuant to the Defendant's instructions, directing people to Defendant's websites

and services, as well as direct access to a Defendant's app-based marketing system, can all give

Opposition to Motion to Dismiss

rise to the inference of an agency relationship. *Armstrong v. Investor's Bus. Daily, Inc.*, No. CV182134MWFJPRX, 2019 WL 2895621, at *7 (C.D. Cal. Mar. 12, 2019).

That such "brand partners" in a multi-level marketing scheme are rarely employees (they are almost never employees and almost always independent contractors) does not factor into an agency analysis, as it does in the employment context ((MTD at 24) (citing *Hernandez*)). Defendant conflates one's *employment status* with one's *agency status*; the two are independent, as one can be a non-employee independent contractor, yet still be an agent. *Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1189 (9th Cir. 2002). Examples of this phenomena are rife in other contexts, for example, a CEO's personal assistant may be a 1099 contractor and not an employee, but still act as the CEO's agent. Not only that, but the tests for both are markedly distinct. *Id.* Indeed, Ninth Circuit courts have had little trouble in imputing an agency relationship in the multi-level marketing context, including when the principal trains its independent contractors to sell its products in a certain way, including in a "recruit or die" strategy that imposed production requirements as a condition of maintaining commission levels. *In re PFA Ins. Mktg. Litig.*, 696 F. Supp. 3d 822, 854 (N.D. Cal. 2022).

Nor does the Plaintiff need to prove ratification, though he has done so, just so long as he has alleged a sufficient basis for one of the other two generally accepted theories (actual authority or apparent authority) of TCPA vicarious liability agency law. *Henderson*, 918 F.3d at 1072–73 (9th Cir. 2019). "Ratification occurs when a principal knowingly chooses to accept the benefits of unauthorized actions an agent takes on the principal's behalf." *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 833 (N.D. Ill. 2016); Restatement (Third) of Agency § 4.01(1) (2006) cmt. d. ("Ratification does not require a pre-existing formal agency relationship."). "[R]atification may create a relationship of agency when none existed between

Opposition to Motion to Dismiss

the actor and the ratifier at the time of the act. It is necessary that the actor have acted or purported to act on behalf of the ratifier." Restatement (Third) of Agency § 4.01 cmt. b; *see Henderson*, 918 F.3d at 1075 (9th Cir. 2019) (citing the Restatement and holding in a TCPA action that "ratification may create an agency relationship when none existed before the acts are 'done by an actor … who is not an agent but pretends to be.'"). To demonstrate prospective ratification, a plaintiff must show that a principal had full knowledge of all the facts, *or* was willfully ignorant of those facts, and manifested an intention to ratify the act in question, *or* that an agent acted for a principal's benefit and the principal "fail[ed] to object or repudiate an action." *Henderson*, 918 F.3d at 1074-75; *Aranda*, 179 F. Supp. 3d at 831.

Here, Plaintiff sufficiently pleads LifeWave's vicarious liability predicated on a ratification theory based on the same allegations supporting direct liability and an actual authority or apparent authority theory. Even if actual or apparent authority were disputed, LifeWave ratified Lundberg's conduct by accepting the benefits of, and failing to repudiate, the unlawful calls after knowledge of material facts. *See id.* Specifically, it is alleged that LifeWave (1) not only provided, but also hosted, marketing materials to Lundberg, (2) provided an app for its "brand partners" to send the subject messages using its infrastructure, and (3) encouraged and educated its brand partners on how to use the app and how to market to customers, *including by instructing brand partners how to use the app's text messaging feature* and encouraging them to use it. Given that the Plaintiff has alleged that the messages were sent using LifeWave's app, it stands to reason that LifeWave could also control and audit the use of the app, including by periodically reviewing app usage for TCPA compliance. They ratified accordingly by either knowing of the violations and doing nothing or being willfully ignorant of them.

Moreover, LifeWave knowingly accepted the benefits of the illegal calls made to

Opposition to Motion to Dismiss

numbers on the National Do Not Call Registry. Not only was LifeWave directly involved in the calls, but it got *exactly* what was intended from them, the opportunity to sell its magic products. *See, e.g.*, *Aranda*, 179 F.Supp. 3d at 833 (holding sellers ratified telemarketers' conduct by accepting the benefits of the unlawful calls in TCPA case); *Keim v. ADF Midatlantic, LLC,* 2015 WL 11713593, at *8 (S.D. Fl. 2015) (holding allegations sufficient to state a claim where seller accepted the benefits of the conduct by having text messages sent on its behalf to phone numbers obtained on its behalf); *Abante Rooter & Plumbing, Inc. v. Alarm.com, Inc.*, 2018 U.S. Dist. LEXIS 132078 (N.D. Cal. 2018) (holding a reasonable jury could find defendant liable on ratification theory where "Alarm.com knew of Alliance's allegedly illegal telemarketing conduct and accepted the benefits therefrom").

The nature of LifeWave's business and the importance of LifeWave's control of its marketing through brand partners using its trademarks to proving actual authority, apparent authority, and ratification in this case cannot be understated. LifeWave eschews actual argument on any of these three bases and brushes off the Plaintiff's allegations as "misleading and conclusory" while failing to address why and how it trains its brand partners, why it supplies and hosts marketing materials for them, and why it provides them *an app to conduct the very conduct complained of here.* That LifeWave fails to address its provision of an app or other training and marketing matters speaks volumes. By knowingly training its brand partners to make such solicitations and also the fruits of the solicitation without repudiation, including by keeping Defendant Lundburg on as a brand partner, LifeWave plausibly ratified the calls. In any event, the point remains that the Complaint need not prove ratification (or apparent or actual authority, either). It need only plausibly allege facts from which ratification (or actual or apparent authority) can be *inferred*, which it does by alleging facts of LifeWave's control.

Opposition to Motion to Dismiss

This is not to mention that the Plaintiff has pled that the LifeWave app somehow sends the text messages at issue. Crediting this allegation as true, that would mean that LifeWave would be directly liable as the initiator and actual sender of the calls, for example, if the app provided the functionality to directly send messages using LifeWave's Twilio account. The scope of direct liability is determined by the statutory text. The relevant regulation here, 47 C.F.R. § 64.1200(c)(2), prohibits "initiat[ing]" a text message to any number on the National Do Not Call Registry. And anyone who "initiates" a call under the TCPA is subject to *direct* TCPA liability without further analysis. *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 960 (8th Cir. 2019) ("Thus, to be held directly liable, the defendant must be the one who "initiates" the call."). A persuasive 2013 FCC order clarifies, "a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call." 2013 FCC Order, *In re DISH Network, LLC*, 28 FCC Rcd. 6583 (2013). As such, all a Plaintiff needs to plead at the pleadings stage is that LifeWave took the steps necessary to physically place the call (or send the text message). That's the end of the analysis, full stop. *Golan*, 930 F.3d at 960.

Because the Plaintiff has alleged that the app serves as a conduit allowing a user-friendly way to send messages using LifeWave's systems, it follows that LifeWave is *directly liable* for the text messages it initiated. LifeWave, not any of its MLM members, physically placed the unlawful messages at issue because they were sent from LifeWave's telephone account and because, at the end of the day, LifeWave was the sender of the messages (assuming that the messages were sent from LifeWave's Twilio account). What Plaintiff has pled is no different than a company setting up a boiler room from which its hired guns place calls; in such an instance, both the company and its minions are liable.

The relevant case law also makes clear that a person need not physically initiate or dial a

Opposition to Motion to Dismiss

call in order to be directly liable for the call; indeed, a caller can initiate the call through another if they "take the steps necessary to physically place a telephone call." *In re Dish Network*, 28 F.C.C. Rcd. 6574, 6583 (2013). Placing a call for a company's behalf using a company-provided app, together with several other even more remote types of conduct, including securing a telephone connection, providing reports, and contracting for call center services, are all actions which are sufficient to "initiate" a call and impose direct liability. *See in re Dialing Servs., LLC*, 29 F.C.C. Rcd. 5537 (2014) (citing *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 377 (4th Cir. 2013) and *Lucas v. Telemarketer Calling From (407) 476-5670 & Other Tel. Numbers*, No. 1:12-CV-630, 2014 WL 1119594, at *10 (S.D. Ohio Mar. 20, 2014) for the proposition that "in evaluating the TCPA liability of third parties who engage robocalling services, courts have assumed liability of the latter for any illegal calls made using the service, explaining that 'the language of the Act indicates that it is intended to apply to the individuals who use the autodialing systems that place calls, and not just to the autodialing services themselves.'").

At bottom, given that the Plaintiff has plausibly pled facts from which agency may be inferred, the nature of any agency relationship (or direct liability) between LifeWave and Lundberg will be the proper subject of discovery and need not be pled at the pleadings stage; facts which may plausibly be read as giving rise to the inference of the existence of an agency relationship are sufficient. *Mauer v. Am. Intercontinental Univ., Inc.*, 2016 U.S. Dist. LEXIS 120451, at *2 (N.D. Ill. Sep. 7, 2016) (holding a plaintiff must only "allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts"). Indeed, the language of being on an "advisory council" indicates that LifeWave has designated the promoters of the event as "advisors," which indicates a degree of control and advice, which is a hallmark of agency. This is not to mention that the individual

Opposition to Motion to Dismiss

identified in the communications was also identified as a "Senior Presidential Director" of LifeWave and part of its "Leadership Counsel." Notably, as discussed above, the use of a trademark, LifeWave, also satisfied direction into Oregon for personal jurisdiction purposes, even on a vicarious liability theory. *See Ott*, 65 F. Supp. 3d at 1061.

E.    *Plaintiff sufficiently pleads willful damages.*

The TCPA provides for treble damages for any entity violating the TCPA "knowingly" or "willfully." Defendant claims that Mr. Wingard's allegations of such damages are made "without support." However, such an argument ignores the specificity of the Plaintiff's allegations, including that it knew that it was acting intentionally. In interpreting the willful or knowing standard, courts require only that a party's actions were intentional, not that it was violating the statute. *See, e.g.*, *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1151 (N.D. Ill. 2014) (holding that knowing violation requires only that defendant know of the facts constituting the offense); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 U.S. Dist. LEXIS 37310 (N.D. Ill. Mar. 19, 2013) ("[T]he Court adopts the more common interpretation that 'willfully' or 'knowingly' simply requires that the act be intentional or volitional, as opposed to inadvertent, and not that defendant must have known that the conduct would violate the statute."). The Plaintiff has pled facts in his Amended Complaint that give rise to the plausible inference that Defendant knowingly sent messages to a number on the Do Not Call Registry, or at least directed Lundberg to do so. Accordingly, the Defendant's motion on this point must fail.

Another Court recently clarified the requisite legal standard for a Defendant to have "knowingly" violated the TCPA. In *Koeller v. Seemplicity Security Inc.*, No. 4:24-CV-00528-SRC, 2024 WL 4751306, at *4 (E.D. Mo. Nov. 12, 2024) (cleaned up), the Court explained, with respect to related Do Not Call Registry claims under the TCPA:

Under the plain text of section 227(c)(5), two types of violations may entitle a plaintiff to

Opposition to Motion to Dismiss

damages amounting to three times the set statutory damages: knowing violations and willful violations. . . . The Court therefore begins by considering the ordinary meaning of the adverbs "knowingly" and "willfully." . . . . "[K]nowingly" ordinarily means "[i]n a knowing manner" or "with knowledge," i.e., "intelligently, consciously, intentionally, etc."

The proper interpretation of section 227(c)(5) therefore turns on how a defendant knowingly "initiated any telephone solicitation to:...[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."

When read into section 64.1200(c)(2), "knowingly" and "willfully" modify a transitive verb—"initiated." Ordinarily, a listener assumes that an adverb that modifies a transitive verb "tells the listener how the subject performed the entire action." *Flores-Figueroa v. United States*, 556 U.S. 646, 650 (2009). For example, "if a bank official says, 'Smith knowingly transferred the funds to his brother's account,' " listeners "would normally understand the bank official's statement as telling [them] that Smith knew the account was his brother's." *Id.* That is because "once [knowingly] is understood to modify the object of [the] verb[ ], there is no reason to believe it does not extend to the phrase which limits that object." *Id.* at 657 (Scalia, J., concurring in part and concurring in the judgment).

So too in the context of section 227(c)(5) and section 64.1200(c)(2). There, a listener would ordinarily understand, for example, that knowingly "initiated any telephone solicitation to:...[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry," 47 C.F.R. § 64.1200(c)(2), means that a person knew that he initiated a telephone solicitation and knew that he was calling a residential telephone subscriber who had registered his or her telephone number on the national do-not-call registry.

It defies logic and common sense to argue that a sophisticated entity like LifeWave would "unknowingly" send text messages to a number on the Do Not Call Registry using an app it provided to its brand partners. To the contrary, it could have included functionality to, for example, scrub numbers against the Do Not Call Registry, but it did not. Indeed, at least one Ninth Circuit court has credited the allegation that plaintiff never provided his information to the defendant sufficient to state a claim for treble damages. *Keifer v. HOSOPO Corp.*, No. 18-cv-1353-CAB, 2018 WL 5295011, at *5 (S.D. Cal. Oct. 25, 2018). This Court should likewise hold.

As in *Keifer*, the Complaint alleges that LifeWave 'knew or should have known' that

Opposition to Motion to Dismiss

Plaintiff's number was on the National Do Not Call Registry given that the number had been

registered for over a year, Plaintiff never provided his consent or contact information to

LifeWave, and LifeWave provides its brand partners with a messaging system and app, yet failed

to implement readily available and easily-implemented Do-Not-Call scrubbing functionality. The

allegations in the Complaint are sufficient to put Defendant on notice of the potential for the fact

that a fact finder can determine that a violation of the TCPA was done in a "knowing" or

"willful" manner. These allegations more than sufficiently allege knowing or willful conduct.

*F.        Discovery should not be stayed.*

Defendant's sole argument in support of its motion to stay is that its motion to dismiss

*may* prevail. That is no basis to stay discovery. As has been explained above, the Plaintiff has

adequately pled personal jurisdiction, including insofar as it pertains to the direct or vicarious

liability claims, the text messages were clearly telephone solicitations, and there exists a right of

action for the Caller ID cause of action. In short, Defendant's motion is likely to be denied. The

Court should deny the defendant's motion to stay the case. A party has no right to a stay, and the

party seeking a stay bears the burden of proving that the Court should exercise its discretion

to stay all or a portion of the case. *See Ind. State Police Pension Trust v. Chrysler LLC*, 556 U.S.

960, 961 (2009). Defendant has not met that burden.

Importantly, a stay-related delay would prejudice Plaintiff and other class members by

amplifying the risk that evidence will be lost or destroyed. *E.g.*, *Saleh v. Crunch, Ltd. Liab. Co.*,

No. 17-62416-Civ-COOKE/HUNT, 2018 U.S. Dist. LEXIS 36764, at *4-5 (S.D. Fla. Feb. 28,

2018) ("a stay would prolong this matter on the Court's docket and could conceivably prejudice

Plaintiff by the fading memory of any witnesses"); *Lathrop v. Uber Techs., Inc.*, No. 14-CV-

05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) (plaintiffs in putative class action

may "suffer prejudice from a stay because the case would extend for an indeterminate length of

Opposition to Motion to Dismiss

time, [and] increase the difficulty of reaching class members."). Here, the Plaintiff's putative

class is based off the fact that the TCPA claims are governed by the four year federal statute of

limitations in 28 U.S.C. § 1658(a) ("Except as otherwise provided by law, a civil action arising

under an Act of Congress enacted after [December 1, 1990] may not be commenced later than 4

years after the cause of action accrues"); *See also Giovaniello v. ALM Media, LLC*, 726 F.3d

106, 115 (2d Cir. 2013) (four-year statute of limitations applies to private TCPA claims in

federal court). However, not all telecommunications companies, including the companies that are

used to engage in text messaging, keep records of telephone activities for up to four years, keep

stored message content even shorter, and without an immediate gathering of records, the

likelihood of destruction increases with each passing day. Many major telecommunications

providers will only retain text message information for 12-18 months, and presumably smaller

telecommunications providers keep this information for an even shorter period.

The risk to the putative class members' interests is not merely hypothetical.  Multiple

decisions in TCPA class action cases have turned on the destruction of records necessary to

identify class members.  *E.g., Levitt v. Fax.com*, No. 05-949, 2007 WL 3169078, at *2 (D. Md.

May 25, 2007) (denying class certification in a TCPA case because "critical information

regarding the identity of those who received the facsimile transmissions" was not available);

*Pasco v. Protus IP Solutions, Inc.,* 826 F. Supp. 2d 825, 831 (D. Md. 2011) (granting the

defendant summary judgment for the substantially same reason). There are also other

prejudices not associated with calling records that the Plaintiff will face from a stay. *Sanaah v.

Howell*, No. 08-cv-02117-REB-KLM, U.S. Dist. LEXIS 35260, *2 (D. Colo. Apr. 9, 2009)

("with the passage of time, the memories of the parties and other witnesses may fade, witnesses

Opposition to Motion to Dismiss

may relocate or become unavailable, or documents may become lost or inadvertently destroyed."). Here, the Plaintiff is simply seeking to proceed in the ordinary course of discovery.

Finally, a stay will delay Plaintiff's ability to seek the injunctive relief that is also at issue. When a case seeks both injunctive relief and damages, as this one does, this factor weighs more heavily against a stay than if the potential harm was tied only to monetary relief. *See, e.g.*, *Aldapa v. Fowler Packing Co., Inc.*, Case No. 11:5-CV-00420-DAD (SAB), 2016 WL 6124216, at *1 (E.D. Cal. Oct. 20, 2016) ("[S]taying a suit seeking injunctive relief against ongoing or future harm causes a more significant hardship against a plaintiff resisting a stay than a suit for damages."). The public has an interest in having this case proceed. Given this fair possibility of harm to Plaintiff, Defendant must make a "clear showing" of the hardship it will suffer if the case proceeds. *Pascal v. Concentra, Inc.*, 2019 U.S. Dist. LEXIS 185193, at *8 (N.D. Cal. Oct. 24, 2019). Here, there is none.

"Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect." *Valenzuela v. Crest-Mex Corp.*, No. 3:16-cv-1129-D, 2017 U.S. Dist. LEXIS 98963, 2017 WL 2778104, at *5 (N.D. Tex. June 26, 2017). It is well-settled that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity . . . .'" *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005). Defendant's generic contention of its prejudice absent a stay is without merit. This case should proceed.

## VIII.    CONCLUSION

This Court must deny Defendant's motion to dismiss in its entirety. Alternatively, to the extent that the Court finds that additional questions remain, it should permit the Plaintiff to amend to correct the deficiencies as necessary.

Opposition to Motion to Dismiss

RESPECTFULLY SUBMITTED AND DATED this October 29, 2025.

> s/Andrew Roman Perrong
> Andrew Roman Perrong, OSB No. 243320
> a@perronglaw.com
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, PA 19038
> 215-225-5529
> Lead Attorney for Plaintiff and the Proposed Class

## CERTIFICATE OF WORD COUNT

This brief complies with the applicable page-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains fewer than 35 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Dated: October 29, 2025.

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

Dated: October 29, 2025                    */s/ Andrew Roman Perrong*
                                           Andrew Roman Perrong, Esq.

Opposition to Motion to Dismiss