Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Attorney for Plaintiff and the Proposed Class

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON
# PORTLAND DIVISION

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated,<br><br>　　　　Plaintiff<br><br>vs.<br><br>LifeWave, Inc.<br>　and<br>Renate Lundberg<br>　　　　Defendants. | Case No. 3:25-cv-752<br><br>OPPOSITION TO DEFENDANT RENATE LUNDBERG'S MOTION TO DISMISS<br><br>TCPA (47 U.S.C. § 227)<br>DEMAND FOR JURY TRIAL |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
RENATE LUNDBERG'S
MOTION TO DISMISS**

Opposition to Motion to Dismiss

## I. INTRODUCTION

Defendant's Renate Lundberg's (Lundberg or Defendant's) motion to dismiss simply demonstrates the existence of factual disputes related to agency and whether the messages were "telephone solicitations," warranting denial, and is simply an effort to avoid answering for a straightforward violation of the TCPA by recasting factual disputes as pleading deficiencies and by attacking the very tools Congress envisioned for enforcing the statute. Moreover, to the extent that Lundberg's Motion to Dismiss contradicts LifeWave's, this provides an independent reason to deny both motions and to sort these disputed allegations out in discovery.

The Amended Complaint alleges that Defendant Lundberg, a so-called LifeWave "Brand Partner," sent multiple text message calls to the Plaintiff using LifeWave's infrastructure selling LifeWave's products, without Plaintiff's consent. Plaintiff had no relationship with either Defendant, never provided his number but instead continued to receive text message calls advertising LifeWave's goods and services, including promotional flyers outlining products and pricing. Those factual allegations are specific, detailed, and more than sufficient under Rule 8.

Finally, Defendant's challenges to the class allegations are improper for much the same reasons as in opposition to LifeWave's motion. Rule 12(f) motions to strike class allegations are disfavored and rarely granted before discovery, and a growing body of case law counsels in favor of holding there is a private right of action for the Telemarketing Caller ID Class. Defendant's motion should therefore be denied in its entirety.

## II. FACTUAL BACKGROUND

The Plaintiff filed the instant Amended Complaint alleging violations of the Telephone Consumer Protection Act for unsolicited text messages which Defendant, acting in concert with Defendant LifeWave, placed to his number on the National Do Not Call Registry. The Defendant

has filed a Motion to Dismiss, or in the alternative, to strike certain claims and class allegations. This response follows.

### III.  LEGAL STANDARD

"The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6)." *Matthews v. Mid City Cannabis Club, Inc.*, No. CV 20-07841 PA (JPRx), 2021 WL 1567496, at *2 (C.D. Cal. Mar. 2, 2021). Indeed, as it noted, "[t]he Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The purpose of Rule 8(a)(2) is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In assessing a Rule 12(b)(6) motion to dismiss, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

To overcome such a challenge, a plaintiff's "factual allegations in the complaint must suggest that the claim has at least a plausible chance of success." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016) "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). The function of a motion made under this rule is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). "While a Rule 12(f) motion provides the means to excise improper materials from pleadings, such motions are generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010). With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party and deny the motion if there are any doubts. *Id.*

## IV.   ARGUMENT

A.   *Plaintiff alleges more than one "telephone solicitation."*

The TCPA prohibits making a "telephone solicitation" to a number on the National Do Not Call Registry. And the relevant regulation, 47 C.F.R. § 64.1200(f)(15), defines a "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." The Amended Complaint plausibly alleges that the text messages in the Complaint were sent by Defendant Lundberg directly, using LifeWave's infrastructure, to encourage the called party to purchase and make use of the Defendant's products. As the Plaintiff outlined in opposition to Defendant LifeWave's motion to dismiss, the messages each advertised various of LifeWave's products for sale, including by, in some instances, linking to promotional materials and flyers on the LifeWave website, which such materials described various promotions, sales, and pricing for LifeWave's products.

No matter how hard Lundberg tries, she cannot recast these plain telephone solicitation messages encouraging the purchase of specific goods and services into non-solicitation informational calls. Given that the messages at issue plainly advertise and are encouraging the purchase of such products as LifeWave's energy enhancer, Y-Age System, and other products such as eye cream, they are plainly telephone solicitations. To see why, consider each of the authorities Defendant (and Plaintiff) cites. For example, in *Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094, 1100 (D. Ariz. 2024), the District of Arizona held that text message calls that encouraged the Plaintiff to "sign up to receive 'offers' and 'special offers' and "included a link to the front page of Defendant's website where [she] could, among other things, locate Defendant's stores and learn about its products" were telephone solicitations. That's almost exactly what the messages at issue here, offering not only LifeWave's products, but specific offers on products such as energy enhancers and eye creams. In this sense, the messages are more so telephone solicitations than the messages in *Chesbro v. Best Buy Stores, L.P.*, which encouraged the plaintiff to "redeem" his "Reward Zone points" that "required going to a Best Buy store and making further purchases of Best Buy's goods." 705 F.3d 913, 918 (9th Cir. 2012).

By contrast, the messages at issue here are nothing like the non-solicitation messages in the other cases to which Defendant cites. For example, in *Reardon v. Uber Techs., Inc.*, the messages were not aimed at selling *anything*, instead, they encouraged the plaintiff "to attend a 'recruiting webinar'" to be able to *drive for Uber*, which "is akin to an offer of employment." *Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015). The messages here do no such thing: they offer discounts on LifeWave's products and webinars touting their benefits; they do not offer employment. The messages in *Friedman v. Torchmark Corp.* were similarly offers of employment that are not present here on face. Although a "company's

advertisement of available job opportunities within its ranks is not the advertisement of the commercial availability of property," the messages here did not advertise "job opportunities;" instead, they plainly and unequivocally advertised "the commercial availability [and] quality of any . . . goods . . . within the ordinary meaning of those words." *Friedman*, No. 12-CV-2837-IEG BGS, 2013 WL 1629084, at *3 (S.D. Cal. Apr. 16, 2013) (quoting *Lutz Appellate Servs., Inc. v. Curry*, 859 F.Supp. 180 (E.D. Pa. 1994)).

     Simply put, approaching the issue with a "measure of common sense," as this Court must, *Chesbro*, 705 F.3d at 918, nothing about the calls here can be cast as "informational and recruitment messages that have not qualified as telephone solicitation." (Br. at 7). At best, the calls might be characterized as so-called "dual purpose" calls, those with "both a customer service or informational component as well as a marketing component," which are nevertheless prohibited. *Id.* at 917. It is common sensical that messages advertising the opportunity to "SAVE 30% on your favorite Lifewave products," advertising energy enhancers that promise "20% More Fat Burning, More Effective Work Outs, and so much more," and touting how one can save "$33[to] See and feel the difference in your skin when using our unique botanical hydrating and rejuvenating Day and Night lotion" all plainly "encourage[e] the purchase or rental of, or investment in, property, goods, or services," and "[advertise] the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(15), (16). There can be no question that the messages encouraged the purchase of LifeWave's goods, that the Plaintiff received more than one such message, and thus has stated a claim under the TCPA.

5

Opposition to Motion to Dismiss

B.  *There exists a private right of action for the TCPA's Caller ID regulations. Subsequent decisions have called* Griffin *into question.*

As Lundberg correctly points out (and simply mostly copies from LifeWave's brief), last year, this Court considered *Griffin v. Am.-Amicable Life Ins. Co. of Texas*, where this Court concluded that 47 C.F.R. § 64.1601(e) does not create a private right of action under 47 U.S.C. § 227(c)(5). No. 6:24-CV-00243-MC, 2024 WL 4333373, at *5 (D. Or. Sept. 27, 2024). At least *five* subsequent court decisions from *three* jurisdictions, including Washington, have confirmed that this Court's prior reasoning in *Griffin* was incorrect, including because that decision relied on fundamentally faulty reasoning employed by the District of Maryland in *Worsham v. Travel Options, Inc.*, No. 14-2749, 2016 WL 4592373, at *4-5 (D. Md. Sept. 2, 2016). *Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373, 380 (E.D. Mich. 2025) (holding 47 C.F.R. § 64.1601(e) confers a private right of action under Section 227(c) of the TCPA); *Newell v. JR Cap., LLC*, -- F. Supp.3d --, 2025 WL 2004706, at *2 (E.D. Pa. July 16, 2025); *Dobronski v. CHW Grp., Inc.*, 2025 WL 2426370, at *7 (E.D. Mich. Aug. 21, 2025); *Dobronski v. Juliasangel Mktg., LLC*, No. 2:24-CV-12379-TGB-APP, 2025 WL 2659265, at *11 (E.D. Mich. Sept. 17, 2025); *Barton v. Bright Solar Marketing LLC*, No. 3:25-CV-05310-DGE, 2025 WL 2880136, at *5 (W.D. Wash. Oct. 9, 2025).

As an initial matter, Lundberg's statement that the "Ninth Circuit . . . [has] consistently held that the TCPA does not create a private right of action for violation of this regulation, which is enforceable only by the FCC and state attorneys general" is demonstrably false. The Ninth Circuit has not weighed in on the issue of whether or not there is a private right of action under Section 227(c) of the TCPA for violations of 47 C.F.R. § 64.1601(e). Lundberg cites to no authority from the Ninth Circuit standing for that proposition. Lundberg's citations to *Travel Options* itself and *Meyer* do not alter this analysis. As the Plaintiff has observed, *Griffin* and its

6
Opposition to Motion to Dismiss

progeny relied on the faulty reasoning the District of Maryland adopted in *Travel Options*. As the *Newell* Court explained:

> In my view, *Worsham* misunderstands the structure of the statute. In § 227(c), Congress explicitly delegated to the FCC the authority to evaluate different methods and procedures to protect privacy rights – including network technologies – and issue appropriate regulations. If § 64.1601(e) is promulgated as a "method or procedure" to "protect residential telephone subscribers' privacy rights," it fits under § 227(c) and a private cause of action exists. And the administrative record establishes that the FCC viewed caller ID as a "network technology" that Congress *required* the FCC to evaluate as a method and procedure to protect consumer privacy under § 227(c). Thus, caller ID fits into § 227(c), even if (c) does not mandate that the FCC adopt technological methods and authorizes non-technological methods and procedures as well. *See also Dobronski*, 773 F.Supp.3d 373 (concluding, on a motion for reconsideration, that § 64.1601(e) was promulgated under § 227(c), and rejecting *Worsham*'s technology-focused arguments).
>
> Further, § 227(d) only applies to telemarketing made using specific technologies – fax machines, automatic telephone dialing systems, and artificial and prerecorded voice messages – whereas § 64.1601(e) applies to a broader range of telemarketing calls, including traditional manually dialed telemarketing calls. The Third Circuit has cautioned that "our starting point [in regulatory interpretation] is to attempt reconciliation of seemingly discordant statutes and regulations." *LaVallee Northside Civic Ass'n v. Virgin Islands Coastal Zone Mgmt. Comm'n*, 866 F.2d 616, 623 (3d Cir. 1989). It is difficult to discern how § 64.1601(e) could have been lawfully promulgated under § 227(d) without exceeding the FCC's delegated authority. Section 64.1601(e) thus fits best under § 227(c), not (d).
>
> *Worsham* does not grapple with these issues, but attempts instead to have § 64.1601(e) straddle two sections of the statute, an outcome for which I can discern no legal authority. The regulation fits comfortably within § 227(c), which supports the existence of a private right of action.

*Newell*, 2025 WL 2004706, at *5.

*Meyer* is distinguishable and problematic for the same reasons as *Worsham* and *Griffin*, as outlined in the Plaintiff's opposition to LifeWave's motion to dismiss, because it concluded, *ipse dixit*, that the Caller ID regulations were not promulgated pursuant to Sections 227(b) or (c) of the TCPA, without adequately addressing what alternative provision of the TCPA it was promulgated under. *See Meyer v. Cap. All. Grp.*, No. 15-CV-2405-WVG, 2017 WL 5138316, at *16-*17 (S.D. Cal. Nov. 6, 2017). Executive agencies do not create regulations absent an explicit

7

Opposition to Motion to Dismiss

authorization from Congress. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 204 (1988). Thus, if *Meyer* is correct, there are only two possibilities logically deducible from that decision: either the FCC implemented a regulation under the Administrative Procedures Act without Congressional approval, or it implemented the regulation under some other portion of the TCPA which did not explicitly authorize such rulemaking as an initial matter. Given that courts must assume that agencies operate within the bounds of congressionally-authorized authority to effectuate the intent of the Congress, *Kohli v. Gonzales*, 473 F.3d 1061, 1068 (9th Cir. 2007) (holding that it is a "well established principle of federal law that administrative agencies are entitled to a presumption that they 'act properly and according to law'" (citing *F.C.C. v. Schreiber*, 381 U.S. 279, 296 (1965))), *Meyer* impermissibly concludes that the FCC implemented a regulation either without authority at all, or acting under a subsection of the TCPA that would not have authorized such rulemaking as an initial matter.

That's not how statutory interpretation works, and it was in this respect that *Meyer* went astray, simply assuming that the FCC (impermissibly) created a rule in the absence of an explicit citation to promulgative authority. *Meyer's* implicit assumption, that the FCC can create § 64.1601(e) without a statutory home, is contrary to *Bowen* and its progeny, including *Alexander v. Sandoval*. ("[W]hen a statute has provided a general authorization for private enforcement of regulations, it may perhaps be correct that the intent displayed in each regulation can determine whether or not it is privately enforceable. But it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself.") 532 U.S. 275, 291 (2001). Given that courts presume that agencies act lawfully, and given that the instant regulation must rest on *some* subsection of § 227, once subsections (b), (d), (e), and (i) are eliminated, only

(c) is left standing. And § 227(c) explicitly permits not only the FCC to implement "regulations to implement methods and procedures for protecting the privacy rights described in such paragraph," 47 U.S.C. § 227(c)(2), but also explicitly imparted consumers with a private right of action to enforce the "regulations prescribed under this subsection," 47 U.S.C. § 227(c)(5), precisely as envisaged by the Supreme Court in *Alexander* when it speaks of a "general authorization for private enforcement of regulations" that Congress explicitly authorized.

What's more, *Meyer* cites no authority, other than *Worsham*, for its questionable proposition that the FCC can somehow create a rule to somehow "support consumers' enforcement efforts under the TCPA's subsection c," without simultaneously incorporating, and indeed somehow purporting to sever, subsection c's associated and Congressionally-mandated private right of action. In enacting the instant regulation, the FCC referenced Section 227(c) no fewer than *54 times*. The idea that the same order created private enforcement for the Do Not Call Registry but somehow did not create private enforcement for Caller ID regulations, when they were adopted in the same breath, in the same document, and under the same authority, finds no support in the law. Thus, to the extent that *Meyer* stands for the proposition that 47 C.F.R. § 64.1601(e) was somehow promulgated under Section 227(c) without incorporating the private right of action provided for in 47 U.S.C. § 227(c)(5), that conclusion would also be incorrect, since the private right of action applies to *all* the "regulations prescribed under this subsection," 47 U.S.C. § 227(c)(5). *Meyer's* reading, that the instant regulation was somehow promulgated under the auspices of Section 227(c), and yet severed from that section's private right of action, is incongruous with the explicit text of the statute, the explicit remedy provided in 47 U.S.C. § 227(c)(5), and express Congressional intent. This Court should hold, as with *Dobronski* and its progeny, that a private right of action exists.

C.   *Plaintiff's pleading factually states a claim for violations of the TCPA's Caller ID regulations.*

Lundberg next argues that, even if there was a private right of action for violations of the TCPA's caller ID provisions, those claims should still be dismissed because the calls were not telephone solicitations and because inaccurate caller ID information was not transmitted. Both arguments fail.

First, as explained above, the subject calls were telephone solicitations. Second, the Plaintiff clearly pleads facts for how the Caller ID regulation was violated. To see why, consider what the text of the regulation explicitly requires: the transmission of "caller identification information." 47 C.F.R. §64.1601(e). Helpfully, the regulation goes on to define that term. 47 C.F.R. §64.1601(e)(1). It defines "caller identification information" for the "purposes of this paragraph" as both either "CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer." *Id.* "Ordinarily, when the word 'and' appears in a list of requirements, it is conjunctive and indicates that all requirements must be satisfied." *Cal. v. Altus Fin. S.A.*, 540 F.3d 992, 1008 (9th Cir. 2008). Thus, to comply with the TCPA's caller ID requirement, a telemarketer's caller identification information must transmit *both* ("CPN *or* ANI") *and* "the name of the telemarketer." Plaintiff pleads that the latter of the two requirements, the "name of the telemarketer" was missing, because the caller ID transmitted with the calls "transmitted a geographic location, and not the Defendants' name or telemarketer's name." (Am. Compl. ¶ 34). Specifically, the name transmitted along with the messages was "MCMINNVILLE OR," *not* "LifeWave" or "Renate Lundberg." The caller ID transmitted with the calls thus did not comply with 47 C.F.R. §64.1601(e)(1)'s explicit text because it transmitted a geographic location.

Fortunately for the Plaintiff, the FCC's 2003 TCPA order also provides guidance in this regard. First, it is the *Defendant's burden* to prove that, if the information required is not passed

10
Opposition to Motion to Dismiss

through to the consumer "the telemarketer must provide clear and convincing evidence that the caller ID information could not be transmitted." 2003 TCPA Order, 18 F.C.C. Rcd. at 14121. Defendant has not met its burden of showing that it "could not transmit" caller ID information, least of which because, at the pleadings stage, Plaintiff has shown that it *did* transmit caller ID information, albeit legally deficient and incorrect caller ID information that did not name either Defendant and thus violated the statute. Plaintiff has demonstrated that Defendant transmitted information which does not meet the text of the appliable regulation, as it only transmits a geographic location, and not the caller's name, and thus stated a claim.

As the FCC has explained, "If the information required is not passed through to the consumer, through no fault of the telemarketer originating the call, then the telemarketer will not be held liable for failure to comply with the rules." *Id.* However, here, the Plaintiff has pled, and demonstrated, the opposite: the telemarketer originating the call did not pass the information required, *through its very own fault*, because it failed to avail itself of properly setting the Caller ID name functionality provided by its telephone carrier. (Am. Compl. ¶ 34, 35).

The fact remains that the relevant regulation here is tied to proving what *was* transmitted, not whether the Plaintiff *received* the transmission, nor what the *unrelated content* of the call said (so long, of course, as a plaintiff demonstrates that the call was a telephone solicitation). And if what the Defendant transmitted was something inaccurate and did not meet the requirements of the regulation, it is *that action* which violates the plain text of the statute. The statute speaks of what a "person or entity" "transmits," not what the recipient of the call receives, who the recipient of the call *thought* he was conversing with, or whether discovery is required to ascertain the name that should have been transmitted as an initial matter, MTD at 9, nor does it qualify a violation on whether the recipient receives the information. 47 CFR § 64.1601(e).

With respect to Defendant's second sub-argument, that some calls' content mentioned Lundberg is also of no import, and was an argument *explicitly rejected by the* Newell *Court*. The *content* of a call is plainly not the same as the caller ID sent *with* a call, and the regulation at issue makes it illegal to fail to send a *caller ID name*; it says nothing of the content of the call, which is governed by a separate section of the TCPA entirely. 47 CFR § 64.1200(d)(4). Defendant's argument would apply just as equally to a caller who states on a voice call that they are calling from "LifeWave." That is plainly inadequate, and the *Newell* Court rejected an identical argument that a text message complied because it included a link to the defendant's website. 791 F. Supp. 3d at 584-585. What's more, the FCC also considered website URLs as a potential way to comply with the identification requirements, but did not implement that option. As the *Newell* Court further explained, "In response to the FCC's 2002 NPRM soliciting comments on proposed caller ID regulations, one commenter 'argued that a company's website information should be permitted as a substitute for the name and phone number.' Despite this specific request, the version of § 64.1601(e) promulgated did not include website urls as a compliance option." *Id.* at 585 (cleaned up). Moreover, allowing message content to satisfy the identification requirement "would contravene this directive, Congress's clear intent to protect consumer privacy, and the FCC's specific choice to exclude website urls." *Id.*

A geographic location is plainly not the "name of the telemarketer," which the statute requires to be transmitted. 47 CFR § 64.1200(1). If anything, transmitting a geographic location shows that the functionality to transmit a name *was* an option available by the telemarketer's carrier, but the telemarketer impermissibly transmitted something else, a geographic location, instead of its name, as required. In any event, transmitting accurate caller ID information is a separate requirement than the TCPA's during-call identification requirements that constitute a

separate violation of the TCPA, and for good reason. Caller ID provides a separate, and arguably more reliable means, of connecting the caller to a call than the content of the call itself, because it is legally tied to the subscriber of record for the phone account. Because the Plaintiff has pled that the "name" transmitted in the caller ID data was a geographic location, and not the caller's or telemarketer's name as required by the regulation, the Plaintiff has plausibly stated a claim for those violations.

D.  *Plaintiff sufficiently pleads willful damages.*

The TCPA provides for treble damages for any entity violating the TCPA "knowingly" or "willfully." Defendant claims that Mr. Wingard's allegations of such damages are made without support. However, such an argument ignores the specificity of the Plaintiff's allegations, including that it knew that it was acting intentionally. In interpreting the willful or knowing standard, courts require only that a party's actions were intentional, not that it was violating the statute. *See, e.g.*, *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1151 (N.D. Ill. 2014) (holding that knowing violation requires only that defendant know of the facts constituting the offense); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 U.S. Dist. LEXIS 37310 (N.D. Ill. Mar. 19, 2013) ("[T]he Court adopts the more common interpretation that 'willfully' or 'knowingly' simply requires that the act be intentional or volitional, as opposed to inadvertent, and not that defendant must have known that the conduct would violate the statute."). The Plaintiff has pled facts in his Amended Complaint that give rise to the plausible inference that Defendant knowingly sent messages to a number on the Do Not Call Registry, in addition to knowingly transmitting inaccurate caller ID. Accordingly, the Defendant's motion on this point must fail.

Another Court recently clarified the requisite legal standard for a Defendant to have "knowingly" violated the TCPA. In *Koeller v. Seemplicity Security Inc.*, No. 4:24-CV-00528-SRC, 2024 WL 4751306, at *4 (E.D. Mo. Nov. 12, 2024) (cleaned up), the Court explained, with

13

Opposition to Motion to Dismiss

respect to related Do Not Call Registry claims under the TCPA:

> Under the plain text of section 227(c)(5), two types of violations may entitle a plaintiff to damages amounting to three times the set statutory damages: knowing violations and willful violations. . . . The Court therefore begins by considering the ordinary meaning of the adverbs "knowingly" and "willfully." . . . . "[K]nowingly" ordinarily means "[i]n a knowing manner" or "with knowledge," i.e., "intelligently, consciously, intentionally, etc."
>
> The proper interpretation of section 227(c)(5) therefore turns on how a defendant knowingly "initiated any telephone solicitation to:...[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."
>
> When read into section 64.1200(c)(2), "knowingly" and "willfully" modify a transitive verb—"initiated." Ordinarily, a listener assumes that an adverb that modifies a transitive verb "tells the listener how the subject performed the entire action." *Flores-Figueroa v. United States*, 556 U.S. 646, 650 (2009). For example, "if a bank official says, 'Smith knowingly transferred the funds to his brother's account,' " listeners "would normally understand the bank official's statement as telling [them] that Smith knew the account was his brother's." *Id.* That is because "once [knowingly] is understood to modify the object of [the] verb[ ], there is no reason to believe it does not extend to the phrase which limits that object." *Id.* at 657 (Scalia, J., concurring in part and concurring in the judgment).
>
> So too in the context of section 227(c)(5) and section 64.1200(c)(2). There, a listener would ordinarily understand, for example, that knowingly "initiated any telephone solicitation to:...[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry," 47 C.F.R. § 64.1200(c)(2), means that a person knew that he initiated a telephone solicitation and knew that he was calling a residential telephone subscriber who had registered his or her telephone number on the national do-not-call registry.

It defies logic and common sense to argue that Lundberg "unknowingly" sent text messages to a number on the Do Not Call Registry or "unknowingly" transmitted inaccurate caller ID information. To the contrary, Lundberg could have scrubbed numbers against the Do Not Call Registry or reassigned number database, but she did not. Indeed, at least one Ninth Circuit court has credited the allegation that plaintiff never provided his information to the defendant sufficient to state a claim for treble damages. *Keifer v. HOSOPO Corp.*, No. 18-cv-

14

Opposition to Motion to Dismiss

1353-CAB, 2018 WL 5295011, at *5 (S.D. Cal. Oct. 25, 2018). This Court should likewise hold.

As in *Keifer*, the Complaint alleges that Lundberg 'knew or should have known' that Plaintiff's number was on the National Do Not Call Registry given that the number had been registered for over a year, Plaintiff never provided his consent or contact information to Lundberg or LifeWave, and LifeWave provided its brand partners like with a messaging system and app, yet failed to implement readily available and easily-implemented Do-Not-Call scrubbing functionality. The allegations in the Complaint are sufficient to put Lundberg on notice of the potential for the fact that a fact finder can determine that a violation of the TCPA was done in a "knowing" or "willful" manner. These allegations more than sufficiently allege knowing or willful conduct at the pleadings stage. Lundberg cannot turn a factual dispute reserved for the trier of fact into a basis for striking treble damages claims at the pleadings stage, particularly with the advent of the Reassigned Number Database, which would have prevented the calls to the Plaintiff by showing that the number was reassigned.

E.    *The class claims for the Caller ID class should not be struck.*

Defendant's argument for why the Plaintiff's class action claims for violations of the TCPA's caller ID provision rise and fall on whether the Plaintiff has established that there exists a private right of action for those claims (there does). Thus, given that there is a private right of action for those claims, nothing about them is immaterial or impertinent. The same is true of the Plaintiff's request for classwide injunctive relief.

F.    *Discovery should not be stayed.*

Defendant's sole argument in support of its motion to stay is that its motion to dismiss *may* prevail. That is no basis to stay discovery. As has been explained above, the Plaintiff has adequately pled both the receipt of more than one telephone solicitation, has established that

15

Opposition to Motion to Dismiss

there exists a private right of action for violations of the Caller ID provisions, and has established that he has pled the necessary facts to support the elements of this claim. In short, Defendant's motion is likely to be denied. The Court should deny the defendant's motion to stay the case. A party has no right to a stay, and the party seeking a stay bears the burden of proving that the Court should exercise its discretion to stay all or a portion of the case. *See Ind. State Police Pension Trust v. Chrysler LLC*, 556 U.S. 960, 961 (2009). Defendant has not met that burden.

Importantly, a stay-related delay would prejudice Plaintiff and other class members by amplifying the risk that evidence will be lost or destroyed. *E.g.*, *Saleh v. Crunch, Ltd. Liab. Co.*, No. 17-62416-Civ-COOKE/HUNT, 2018 U.S. Dist. LEXIS 36764, at *4-5 (S.D. Fla. Feb. 28, 2018) ("a stay would prolong this matter on the Court's docket and could conceivably prejudice Plaintiff by the fading memory of any witnesses"); *Lathrop v. Uber Techs., Inc.*, No. 14-CV-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) (plaintiffs in putative class action may "suffer prejudice from a stay because the case would extend for an indeterminate length of time, [and] increase the difficulty of reaching class members."). Here, the Plaintiff's putative class is based off the fact that the TCPA claims are governed by the four year federal statute of limitations in 28 U.S.C. § 1658(a) ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues"); *See also Giovaniello v. ALM Media, LLC*, 726 F.3d 106, 115 (2d Cir. 2013) (four-year statute of limitations applies to private TCPA claims in federal court). However, not all telecommunications companies, including the companies that are used to engage in text messaging, keep records of telephone activities for up to four years, keep stored message content even shorter, and without an immediate gathering of records, the likelihood of destruction increases with each passing day. Many major telecommunications

providers will only retain text message information for 12-18 months, and presumably smaller telecommunications providers keep this information for an even shorter period.

The risk to the putative class members' interests is not merely hypothetical. Multiple decisions in TCPA class action cases have turned on the destruction of records necessary to identify class members. *E.g., Levitt v. Fax.com*, No. 05-949, 2007 WL 3169078, at *2 (D. Md. May 25, 2007) (denying class certification in a TCPA case because "critical information regarding the identity of those who received the facsimile transmissions" was not available); *Pasco v. Protus IP Solutions, Inc.,* 826 F. Supp. 2d 825, 831 (D. Md. 2011) (granting the defendant summary judgment for the substantially the same reason). There are also other prejudices not associated with calling records that the Plaintiff will face from a stay. *Sanaah v. Howell*, No. 08-cv-02117-REB-KLM, U.S. Dist. LEXIS 35260, *2 (D. Colo. Apr. 9, 2009) ("with the passage of time, the memories of the parties and other witnesses may fade, witnesses may relocate or become unavailable, or documents may become lost or inadvertently destroyed."). Here, the Plaintiff is simply seeking to proceed in the ordinary course of discovery.

Finally, a stay will delay Plaintiff's ability to seek the injunctive relief that is also at issue. When a case seeks both injunctive relief and damages, as this one does, this factor weighs more heavily against a stay than if the potential harm was tied only to monetary relief. *See, e.g.*, *Aldapa v. Fowler Packing Co., Inc.*, Case No. 11:5-CV-00420-DAD (SAB), 2016 WL 6124216, at *1 (E.D. Cal. Oct. 20, 2016) ("[S]taying a suit seeking injunctive relief against ongoing or future harm causes a more significant hardship against a plaintiff resisting a stay than a suit for damages."). The public has an interest in having this case proceed. Given this fair possibility of harm to Plaintiff, Defendant must make a "clear showing" of the hardship it will suffer if the

case proceeds. *Pascal v. Concentra, Inc.*, 2019 U.S. Dist. LEXIS 185193, at *8 (N.D. Cal. Oct. 24, 2019). Here, there is none.

"Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect." *Valenzuela v. Crest-Mex Corp.*, No. 3:16-cv-1129-D, 2017 WL 2778104, at *5 (N.D. Tex. June 26, 2017). It is well-settled that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity . . . .'" *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005). Defendant's generic contention of its prejudice absent a stay is without merit. This case should proceed.

## V.     CONCLUSION

This Court must deny Defendant's motion to dismiss in its entirety. Alternatively, to the extent that the Court finds that additional questions remain, it should permit the Plaintiff to amend to correct the deficiencies as necessary.

RESPECTFULLY SUBMITTED AND DATED this January 2, 2026.

> s/Andrew Roman Perrong
> Andrew Roman Perrong, OSB No. 243320
> a@perronglaw.com
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, PA 19038
> 215-225-5529
> Lead Attorney for Plaintiff and the Proposed Class

## **CERTIFICATE OF WORD COUNT**

This brief complies with the applicable page-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains fewer than 20 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature

18

Opposition to Motion to Dismiss

block, exhibits, and any certificates of counsel.

Dated: January 2, 2026.

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.

### CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

Dated: January 2, 2026

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.

Opposition to Motion to Dismiss