Jeffrey G. Bradford, OSB No. 133080
Tonkon Torp LLP
1300 SW Fifth Ave., Suite 2400
Portland, OR 97201
Direct: 503.802.5724
Facsimile: 503.274.8779
Email: jeff.bradford@tonkon.com

Michael J. Gleason, *admitted pro hac vice*
Hahn Loeser & Parks LLP
One America Plaza
600 W. Broadway, Suite 1500
San Diego, CA 92101
Telephone: 619.810.4300
Facsimile: 619.810.4301
mgleason@hahnlaw.com

Attorneys for Defendant, Renate Lundberg

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LIFEWAVE, INC.; and RENATE LUNDBERG,<br><br>Defendants. | Case No. 3:25-cv-00752-AN<br><br>**DEFENDANT, RENATE LUNDBERG'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT, STRIKE CLASS ALLEGATIONS, AND STAY DISCOVERY**<br><br>REQUEST FOR ORAL ARGUMENT |

Defendant Renate Lundberg ("Defendant") respectfully submits this response to Plaintiff Leon Weingrad ("Plaintiff")'s Opposition to the Motion to Dismiss the First Amended Class Action Complaint ("FAC").

## MEMORANDUM OF LAW

### I.    Introduction

Plaintiff's Opposition underscores the First Amended Complaint ("FAC") defects, relying on unalleged text content and nonbinding authority. Neither tactic is successful. When confined to the actual allegations of the FAC – as the Court must – the Complaint pleads that the challenged text messages were (1) directed to someone else ("Joe"), (2) non-commercial and informational, and (3) not telephone solicitations as a matter of law. Without any consumer-facing purchase invitation directed at Plaintiff, the FAC fails to plead actionable telemarketing.

Plaintiff's second cause of action fares no better. The TCPA does not authorize private enforcement of the FCC's Caller ID regulation. Congress created two express private rights of action and omitted any remedy for technical transmission requirements. Courts cannot imply a private right of action where Congress has spoken. Plaintiff's reliance on decisions that assume a private right of action does not justify departure from that principle.

Plaintiff's claim for treble damages should be dismissed. Boilerplate allegations of "willful or knowing" conduct cannot support treble damages. Nor does the FAC allege facts showing Defendant knew Plaintiff's number was on the Do-Not-Call registry or intentionally targeted him with telemarketing messages.

In addition, the telemarketer ID class allegations should be stricken because they rise and fall with the second cause of action, and discovery should be stayed while these threshold legal issues are resolved.

### II.    Argument

#### a.    Plaintiff's Opposition Relies on Material Outside the FAC

As a threshold matter, Plaintiff's Opposition repeatedly references alleged marketing

language, discounts, and product promotion text messages that do not appear in the FAC. (Compare Opp. at 3-5 with FAC ¶¶36-37) That is improper.

On a Rule 12(b)(6) motion, the Court is limited to the complaint, documents incorporated by reference, and matters subject to judicial notice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) ("mere mention of the existence of a document is insufficient to incorporate the contents of a document.") A plaintiff may not amend the complaint through briefing. *Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197, fn 1 (9th Cir. 1998); *Bojorquez v. Wells Fargo Bank, NA*, 2013 WL 6055258, at *4 (D. Or. Nov. 7, 2013).

Here, the FAC quotes only two text messages (1) a July 13, 2024, message inviting "Joe" to an internal, team-only webinar (FAC ¶ 36); and (2) an April 26, 2025, message thanking "Joe" for being part of the LifeWave family and directing him to log into his back office to access a promotion (FAC ¶ 37). The FAC does not allege that Defendant sent Plaintiff text messages offering "SAVE 30%", "20% More Fat Burning," "energy enhancers," or generalized consumer advertising. Plaintiff's attempt to rely on such descriptions in opposition is a tacit admission that the FAC itself does not plead actionable solicitation.

Because the Court must disregard unpleaded allegations, Plaintiff's Opposition cannot cure the FAC's defects.

b. **The FAC Does Not Allege Telephone Solicitations Under § 227(c)(5)**

Plaintiff is right, this Court must interpret the purpose of the text messages[1] alleged in the FAC with a "measure of commonsense." *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012) Commonsense review of the two text messages at issue leads to one conclusion – they were intended for another brand marketing partner of Defendant's team named "Joe." Each message is addressed to "Joe," and each message is directed to a LifeWave team member with access to the "LifeWave back office," rather than a general consumer. (FAC ¶¶ 36-37) This

---

[1] A "telephone solicitation" is a message sent "for the purpose of encouraging the purchase or rent of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(15).

interpretation makes sense in the context of Plaintiff's other allegations that LifeWave operates a "multi-level marketing scheme through purported independent contractors, whom it terms 'brand partners'" and that Defendant Lundberg is a brand partner. (FAC ¶¶ 27-28) Plaintiff additionally alleges that LifeWave provides marketing materials to brand partners. (FAC ¶¶ 30-31) Thus, like the non-actionable texts in *Reardon v. Uber Techs., Inc.* 115 F. Supp.3d 1090, 1096 (N.D. Cal. 2015) and *Friedman v. Torchmark Corp.,* No. 12–CV02837–IEG (BGS), 2013 WL 1629084, at *4 (S.D.Cal. Apr. 16, 2013), the commonsense interpretation is that these texts were informational and intended for members of the LifeWave team that earn money by marketing LifeWave products.

They are not like the solicitations in *Chesbro*, 705 F.3d at 918 and *Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094, 1102 (D. Ariz. 2024) that were consumer facing offers urging purchases through links or in-store. Instead, the alleged texts are internal/team communications – one an invite to a "team-only" webinar and the other with a promotion available to LifeWave members with access to a "back office" log-in. Neither text is a consumer-facing purchase invitation to Plaintiff. Without content directed to Plaintiff encouraging purchases, *Chesbro* and *Abboud* are off-point. *(FAC ¶¶ 36–37).*

They are not "dual purpose" messages either. Ninth Circuit district courts generally find that communications encouraging independent contractor relationships are not "solicitations," as the TCPA defines the term. *Andersen v. Nexa Mortg., LLC*, No. 8:24-CV-00619-DOC-ADSX, 2024 WL 3762098, at *3 (C.D. Cal. Aug. 12, 2024). If LifeWave operates a "multi-level marketing scheme" (FAC ¶27), then messages sent to the LifeWave brand partners regarding webinars and promotion are clearly employment related communications. The alleged messages have more in common with the non-actionable message in *Friedman* encouraging a recipient to attend a webinar to learn about products they could sell rather than the direct consumer marketing text messages in *Abboud*. *See Friedman,* 2013 WL 1629084, at *4.

Finally, even if one message could somehow be characterized as a solicitation, Plaintiff still must plead two or more within a twelve-month period. 47 U.S.C. §227(c). Because neither

pleaded message qualifies as a telemarketing solicitation to Plaintiff, the first cause of action fails as a matter of law.

### c. The Second Cause of Action Should Be Dismissed

#### i. No Private Right of Action Exists Under 47 C.F.R. §64.1601(e)

Plaintiff claims a private right of action under 47 C.F.R. §64.1601(e) and challenges this Court's decision in *Griffin v. Am.-Amicable Life Ins. Co. of Texas*, No. 6:24-CV-00243-MC, 2024 WL 4333373 (D. Or. Sept. 27, 2024). (Opp. at 6 - 9) This argument fails under the TCPA's text and governing precedent.

First, the text of the TCPA forecloses private enforcement of § 64.1601(e). Congress enacted two express private rights of action in the TCPA: (1) §227(b), related to automatic telephone dialing systems / prerecorded voice calls, and (2) § 227(c), related to do-not-call violations. Congress did not authorize private enforcement of provisions related to technical transmission requirements set out in §227(d). "Private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 276, 121 S. Ct. 1511, 1514, 149 L. Ed. 2d 517 (2001).

Second, Plaintiff concedes that this Court has already rejected a private right of action in *Griffin*, which was decided based on thorough and thoughtful analysis of *Worsham v. Travel Options, Inc.*, No. JKB-14-2749, 2016 WL 4592373, at * 4, 7 (D. Md. Sept. 2, 2016), aff'd, 678 F. App'x 165 (4th Cir. 2017); and *Meyer v. Capital Alliance Grp*, No. 15-CV-24-5-WVG, 2017 WL 5138316 (S.D. Cal. Nov. 6, 2017), at *15-17. Those cases were correctly decided and applied the TCPA exactly as it was written to provide private rights of action where expressly authorized by Congress. *Meyer* recognizes that the courts cannot imply a private remedy "no matter how desirable that might be as a policy matter, or how compatible with the statute." *Meyer*, 2017 WL 5138316, *16. And, that statutory silence should be interpreted as precluding a private right of action. *Id. Worsham* also applied the appropriate approach in declining to infer a private remedy absent express Congressional intent. *Worsham* 2016 WL 4592373, at * 4, 7.

Third, the 2003 TCPA Order confirms that this is the correct interpretation. Plaintiff relies

heavily on the FCC implementing order and report throughout the opposition, and though the FCC's interpretation is not binding, it supports Defendant's position. Section XIV. of the Order is titled, "Private Right of Action" and notes that the TCPA is unique:

> in that it provides consumers with two private rights of action for violation of the TCPA rules. One provision permits a consumer to file suit immediately in state court if a caller violates the TCPA's prohibitions on the use of automatic dialing systems, artificial or prerecorded voice messages, and unsolicited facsimile advertisements. A separate private right of action permits a consumer to file suit in state court if he or she has received more than one telephone call within any 12-month period by or on behalf of the same company in violation of the guidelines for making telephone solicitations. *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14135; ¶ 204 (2003)

The FCC did not identify a private right of action for violation of § 227(d) technical provisions or discuss a private right of action in the section involving the Caller ID regulations. *Id.* at 14118-14124, ¶¶173-184. The FCC's contemporaneous interpretation mirrors that of the statute: private enforcement for §§ 227(b) and (c); regulatory enforcement for § 227(d).

Fourth, Plaintiff's reliance on post-*Griffin* district court decisions from other jurisdictions does not override or justify departure from this Court's reasoning. *Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373, 380 (E.D. Mich. 2025); *Newell v. JR. Capital, LLC*, 791 F. Supp.3d 571, 575 (2025), 2025 WL 2004706, at **2 (E.D. Pa. July 16, 2025); *Dobronski v. CHW Grp., Inc.*, 2025 WL 2426370, at *7 (E.D. Mich. Aug. 21, 2025); *Dobronski v. Juliasangel Mktg., LLC*, No. 2:24-CV-12379-TGB-APP, 2025 WL 2659265, at *11 (E.D. Mich. Sept. 17, 2025); *Barton v. Bright Solar Marketing LLC*, No. 3:25-CV-05310-DGE, 2025 WL 2880136, at *5 (W.D. Wash. Oct. 9, 2025) each assume a private right of action without reconciling the absence of enforcement language in § 227 (d). Plaintiff concedes that language in a regulation cannot "conjure up a private cause of action that has not been authorized by Congress." (Opp. at 8 quoting *Sandoval*, 532 U.S. 275, 291.

The TCPA does not authorize private enforcement of 47 C.F.R. § 64.1601(e). *Griffin*, *Meyer*, and *Worsham* correctly interpreted the statute. The FCC's 2003 TCPA Report and Order confirms it. Plaintiff's second cause of action should be dismissed with prejudice.

### ii. Even if a Private Right of Action Existed, Dismissal Would Still be Warranted for Failure to State a Claim

Plaintiff relies on a passage from the FCC's 2003 TCPA Report and Order, 18 F.C.C. Rcd. 14101, and *Newell v. JR Capital, LLC* (E.D. Pa. 2025) 791 F.Supp.3d 571 to contend he plausibly pleaded a violation of the TCPA Caller Identification regulations, 47 C.F.R. §64.1601(e). Neither authority salvages the deficiencies of the FAC.

First, the FCC was addressing obligations of telemarketers engaged in outbound solicitation campaigns. *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14120-21 at ¶179 (2003) (discussing "telemarketers" and "telemarketing calls.") Here, the FAC pleads communications to "Joe" an existing LifeWave team member rather than consumer solicitations. (FAC ¶¶36-37) (*See also* Argument Section II (b), Mot. at p. 6-8, Arg. Sec. III(b).) Section 64.1601(e) caller identification requirements only apply to telemarketers as defined in 47 C.F.R. § 64.1200(f)(13). The 2003 FCC Report and Order presupposes that predicate, which the FAC does not plausibly allege because the text messages were clearly intended for Joe, not a general consumer.

Second, the 2003 FCC Report and Order concerns circumstances where the required Caller-ID information (CPN or ANI) "is not passed through" at all. 18 FCC Rcd. at 14121 ¶179. At no point does the Order address the situation here where Plaintiff agrees that CPN was provided and quibbles about the inadequacy of geographic information where the sender name is included in the text message. (FAC ¶¶ 33-34) In fact, the relevant portion of the 2003 FCC Report and Order does not mention the telemarketer name as a required element to satisfy the Caller ID requirements, and instead limits satisfaction to supplying the ANI or CPN. *Id.* at ¶¶179-182.

Third, the regulation conditions liability on technical feasibility and telemarketer control. 47 C.F.R. §64.1601(e)(1). The FAC does not plead that Defendant (1) controlled the Twilio account, (2) configured the CNAM setting, (3) had the technical ability to transmit a name, or (4) intentionally declined to do so. Instead, Plaintiff alleges only that Twilio defaults to

geographic identifiers if customers do not configure CNAM. (FAC ¶¶ 34-35) That is insufficient under *Iqbal*, 556 U.S. at 678.

Fourth, the facts in this case could not be more dissimilar than *Newell v. JR Capital, LLC* (E.D. Pa. 2025) 791 F.Supp.3d 571, which Plaintiff claims explicitly rejected the commonsense interpretation that the name of a sender in a message does not satisfy the regulation. (Opp. at 12) In *Newell*, the defendant intentionally placed repeated telemarketing messages to a consumer that included a link to a website but not the name of the company or hired telemarketer. *Newell* at 575. Indeed, "none of the texts include[d] the name of the seller or telemarketer. . . as required." *Id.* at 584. The *Newell* court rejected the argument that a website in the body of the message could satisfy the identity requirement, not that providing the name of the purported telemarketer in the body of a text message itself was insufficient.

Here, Plaintiff alleges that the text messages included Defendant's name. (FAC ¶¶ 36-37) This information was "transmitted" to the recipient and complies with the regulation under plain language interpretation. *Royal Foods Co., Inc. v. RJR Holdings, Inc.* 252 F.3d 1102, 1106 (9th Cir. 2001). Plaintiff proffers a statutory interpretation of "transmit" in this section as excluding any information sent in the body of the text. This does not make sense, and it conflicts with the related definition of a "text message" in the regulatory scheme as " a message consisting of text, images, sounds, or other information that is *transmitted* to or from a device that is identified as the receiving or *transmitting* device by means of a 10-digit telephone number or N11 services code." 47 C.F.R. § 64.1600(o)(emphasis added). "Transmit" means "to send or transfer from one person or place to another; to communicate." TRANSMIT, Black's Law Dictionary (12th ed. 2024) Here, both the calling number "CPN" and identity of the sender, Lundberg, were transmitted with the text messages. There is no plausible violation of 47 C.F.R. §64.1601(e)(1).

### d. Plaintiff's Claims for Treble Damages Should Be Dismissed

Plaintiff seeks to make treble damages the default, rather than reserving them for serious violations. By his interpretation, even inadvertent misdirected messages satisfy the statutory requirements for treble damages. 47 U.S.C. § 227(b)(3), (c)(5). Plaintiff is wrong and his

conclusory allegation that "Defendants' violations were "willful, or knowing" in both causes of action warrant dismissal of this claim. (FAC ¶¶ 99, 106).

First, Plaintiff does not address Defendant's authorities establishing that misdirected or inadvertent communications cannot support willful or knowing TCPA violations. This silence equates to a concession that Defendant's authorities' control. See *Cruz-Sanchez v. Nat'l R.R. Passenger Corp.*, No. CV 16-6368-MWF (KSX), 2018 WL 6017034, at *11 (C.D. Cal. June 8, 2018) (collecting cases that failure to respond constitutes a concession.)

Second, the out of Circuit authorities relied on by Plaintiff are inapposite to the facts alleged in the FAC. Each of Plaintiff's cases involve deliberate telemarketing to consumers that is absent here. In *Bridgeview Health Care Ctr. Ltd. v. Clark*, No. 09 C 5601, 2013 WL 1154206 (N.D. Ill. Mar. 19, 2013), defendant hired an advertising company to fax commercial advertisements via fax to solicit customers in his area. *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1151 (N.D. Ill. 2014), involved a telemarketing call automatically connecting the recipient to a sales agent for insurance services. *Koeller v. Seemplicity Security Inc.*, No. 4:24-CV-00528-SRC, 2024 WL 4751306, at *4 (E.D. Mo. Nov. 12, 2024) involved a telemarketing call selling security services. *Koeller v. Seemplicity Security Inc.*, No. 4:24-CV-00528-SRC, 2024 WL 4751306, at *1 (E.D. Mo. Nov. 12, 2024). And *Keifer v. HOSOPO Corp.*, No. 318CV1353CABKSC, 2018 WL 5295011, at *1 (S.D. Cal. Oct. 25, 2018) involved 14 calls made using an automatic dialing system for telemarketing. As demonstrated extensively in the Motion and argued above, the texts at issue are not telemarketing texts directed to consumers. (*See also* Argument Section II (b), Mot. at p. 6-8, Arg. Sec. III(b)). Indeed, Plaintiff admits that calls were intended for "Joe" and he is not "Joe." (FAC ¶¶ 36-37; 71). The telemarketing hurdle for treble damages cannot be overcome.

Third, Plaintiff's cited authorities undermine his argument that treble damages are plausibly pleaded. According to the *Koeller* court, "knowingly initiated" for the purposes of treble damages means both knowing that a call was made and that the recipient was on the Do Not Call ("DNC") registry. (Opp. at 14 citing *Koeller v. Seemplicity Security Inc.*, No. 4:24-CV-

00528-SRC, 2024 WL 4751306, at *4 (E.D. Mo. Nov. 12, 2024). The court dismissed the treble damages claim because plaintiff did not allege facts that defendant "knew that [plaintiff] had registered his number on the national do-not-call registry." *Id*. Nor did plaintiff allege any facts that the defendant "purposefully called a residential telephone subscriber who had registered his number on the national do-not-call registry." *Id*. Plaintiff does not allege facts showing that Defendant knew his number was on the DNC and knowingly sent telemarketing messages to him. The boilerplate allegations that violations were "willful or knowing" are not sufficient. *Blair v. Assurance IQ LLC*, No. C23-0016-KKE, 2023 WL 6622415, at*4(W.D. Wash. Oct. 11, 2023). Even where deliberate advertising was involved, courts have refused treble damages where violation was not willful or knowing. *Bridgeview Health Care Ctr. Ltd.*, 2013 WL 1154206 at *8.

Plaintiff's conclusory and conditional allegations do not state a claim for treble damages. Plaintiff's assertion that Defendant "could have scrubbed" numbers or used different tools (Opp. at 15) is a negligence theory, not willfulness. The claim for treble damages is properly dismissed.

### e. Allegations Related to the Telemarketer ID Class Should be Stricken

Plaintiff does not challenge Defendant's argument that the class action claims for violation of the TCPA's caller ID provision "rise and fall on whether Plaintiff's has established that there exists a private right of action for those claims." (Opp. at 15) Plaintiff agrees "[t]he same is true of Plaintiff's request for class wide injunctive relief." Accordingly, if this Court dismisses the Second Cause of Action based on a lack of a private right of action, the related class claims should be stricken.

### f. Stay of Discovery is Warranted

Plaintiff asserts that Defendant must make a "clear showing" of hardship and cites cases involving motions to stay rather than motions to dismiss. (Opp. at 17-18) But courts routinely stay discovery where a motion presents threshold legal issues that may resolve or substantially narrow the case. *Landis v. N. Am.Co.*, 299 U.S. 248, 254 (1936). Staying discovery where a dispositive motion raises purely legal issues promotes the just, speedy, and inexpensive

resolution of litigation. *See* Tradebay, LLC v. eBay, Inc., 278 F.R.D. 597, 602 (D. Nev. 2011) (noting that "discovery should be stayed while a dispositive motion is pending only when there are no factual issues in need of further immediate exploration, and the issues before the Court are purely questions of law that are potentially dispositive") (quoting Hachette Distrib., Inc. v. Hudson Cnty. News Co., 136 F.R.D. 356, 356 (E.D.N.Y. 1991)).

Here, Defendant's Motion challenges legal issues such as whether Plaintiff pleaded actionable telephone solicitation, whether any private right of action exists for the Caller ID regulation, and whether Plaintiff can pursue class-wide relief for the Caller ID class. Proceeding with discovery before these questions are answered would impose unnecessary cost and burden on both the Court and the parties.

This court should exercise its discretion to stay or limit discovery while this motion is pending because it presents a credible dispositive challenge to the FAC. *See, e.g.*, Little v. City of Seattle, 863 F.2d 681, 685 (9th Cir. 1988); Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729 (9th Cir. 1987); and Havoco of America, Ltd. v. Shell Oil Co., 626 F.2d 549, 553 (7th Cir. 1980)). Accordingly, Defendant requests that the Court stay discovery until this Motion is decided.

### III. Conclusion

Based on the foregoing, Defendant respectfully asks this Court to grant the relief requested in this Motion.

DATED:  January 16, 2026

                     HAHN LOESER & PARKS LLP

                     By: */s/ Michael J. Gleason*
                         Michael J. Gleason
                         Attorneys for Defendant, Renate Lundberg