2026 WL 496609
Only the Westlaw citation is currently available.
United States District Court, D. Oregon.

LEON WEINGRAD, individually and
on behalf of a class of all persons and
entities similarly situated, Plaintiff,
v.
DABELLA EXTERIORS, LLC, Defendant.

Case No. 3:25-cv-396-SI
|
Filed 02/23/2026

**Attorneys and Law Firms**

Andrew Roman Perrong, Perrong Law LLC, Glenside, PA, Anthony Paronich, Paronich Law, P.C., Hingham, MA, for Plaintiff.

Drew L. Eyman, Snell & Wilmer LLP, Portland, OR, Diane J. Zelmer, Pro Hac Vice, Berenson LLP, Jupiter, FL, for Defendant.

**ORDER**

Michael H. Simon United States District Judge

*1 Plaintiff Leon Weingrad, individually and on behalf of a class of all persons and entities similarly situated, has sued DaBella Exteriors, LLC ("DaBella") for intrusive texts and calls allegedly violative of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA"). Now before the Court is DaBella's Partial Motion to Dismiss and Motion to Strike Class Allegation. ECF 24. For the reasons explained below, the Court denies Defendant's Motion.

**STANDARDS**

**A. Motion to Dismiss**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, a court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The Court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The Court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

**B. Motion to Strike**

A court may strike material under Rule 12(f) of the Federal Rules of Civil that is "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). An "immaterial" matter is "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 967 (9th Cir. 2014) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)). "Impertinent" matters are those "that do not pertain, and are not necessary, to the issues in question." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (quoting *Fantasy, Inc.*, 984 F.2d at 1527).

*2 The purpose of a Rule 12(f) motion is to avoid spending time and money litigating spurious issues. *Whittlestone*, 618 F.3d at 973; *see also Fantasy, Inc.*, 984 F.2d at 1527. The disposition of a motion to strike is within the discretion of

the district court. *See Fed. Sav. & Loan Ins. Corp. v. Gemini Mgmt.*, 921 F.2d 241, 244 (9th Cir. 1990). "Motions to strike are disfavored and infrequently granted." *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 561 F. Supp. 2d 1187, 1189 (D. Or. 2008); *see also Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850, 858 (N.D. Cal. 2014) ("Motions to strike are regarded with disfavor because of the limited importance of pleadings in federal practice and because they are often used solely to delay proceedings." (cleaned up)).

### BACKGROUND

In 1991, Congress enacted the TCPA to regulate telemarketing. ECF 23 (First Amended Complaint or "FAC") ¶ 11; Pub. L. No. 102-243, § 2(5) 105 Stat. 2394 (1991). With it, the Federal Communications Commission ("FCC") began operating the National Do Not Call Registry, a list that consumers can register for to express their desire not to receive telephone solicitations. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*. In 2003, the FCC passed another regulation requiring all telemarketers to transmit to the person they are calling the telemarketers' caller ID information[1] and, when available, the name of the telemarketer. *See* 68 Fed. Reg. 44179 (Jul. 25, 2003) (codified at 47 C.F.R. § 64.1601(e)). Alternatively, a telemarketer must provide a customer service telephone number that consumers can call during regular business hours to make a do-not-call request. *See* 47 C.F.R. § 64.1200(a)(7)(i)(A); *Id*. § 64.1200(b)(2).

Mr. Weingrad placed his telephone number on the National Do Not Call Registry at some point before February 2024. FAC ¶¶ 21, 28. Despite that, DaBella contacted Mr. Weingrad at least seven times in 2025 with unwanted texts and calls. *See id.* ¶ 28. On February 6, 2025, DaBella sent Mr. Weingrad two texts, one of its company logo and another addressing him as "Robert" and marketing a "Home Improvement estimate." *See id.* ¶¶ 28-32. The same day, DaBella called Mr. Weingrad four times. *Id.* ¶ 33. Mr. Weingrad missed the first two calls. *Id.* He answered the second two, but when he picked up the telephone, Mr. Weingrad heard only dead air before the call disconnected. *Id.* ¶¶ 33-34. The next day, Mr. Weingrad received yet another call from DaBella. *Id.* ¶ 35. This time, he spoke to a woman named "Teresa" who tried to sell Mr. Weingrad windows. *Id.* "Teresa" attempted to get Mr. Weingrad to allow one of DaBella's employees to come give him an estimate on windows. *Id.* ¶ 36.

On March 6, 2025, Mr. Weingrad filed this lawsuit. *See* ECF 1. DaBella received service on March 10. ECF 4 at 1. Still, Mr. Weingrad received at least one additional call from DaBella on September 11, 2025. FAC ¶ 38.[2] The caller again referred to Mr. Weingrad as "Robert" and asked if he was still interested in getting a quote for windows. *Id.* ¶ 39. When Mr. Weingrad asked why he was getting a call from DaBella, the representative said, "Well, looks like I ...," and then hung up the call. *Id.* ¶ 40. Mr. Weingrad—Leon Weingrad—knows no one named Robert and does not own windows. *Id.* ¶ 52, 55. He has never consented to these calls or texts and "through the filing of this lawsuit, ... had requested that they stop." *Id.* ¶ 57, 51.

**\*3** The telephone numbers that DaBella used to contact Mr. Weingrad are not associated with a "DaBella" caller ID. *See id*. ¶ 44. Instead, the "caller name delivery" associated with the numbers only link to a geographic location, not DaBella's name or the individual telemarketer's name. *Id.* ¶¶ 44, 45. Neither of the telephone numbers that called Mr. Weingrad can be called to make a "do not call" request during regular business hours. *Id.* ¶ 46. Nor will anybody calling or texting those telephone numbers receive an alternate number to call to lodge a do not call request during regular business hours. *Id.* ¶ 47.

### DISCUSSION

Mr. Weingrad has sued DaBella under the TCPA's private right of action, 47 U.S.C. § 227(c)(5), alleging three violations of the TCPA and its enabling FCC regulations. *Id.* ¶¶ 78-93. First, on behalf of himself and a class of individuals on the National Do Not Call Registry,[3] Mr. Weingrad claims that DaBella violated 47 C.F.R. § 64.1200(c), which prohibits telemarketing calls to those on the National Do Not Call Registry. *Id.* ¶ 79. Second, on behalf of himself and a class of individuals who were subject to telemarketing calls without proper caller ID,[4] Mr. Weingrad claims that DaBella violated 47 C.F.R. § 64.1601(e), which sets telemarketer caller ID standards. *Id.* ¶¶ 84-86. Third, on behalf of himself and a class of individuals who continued to receive calls from DaBella after asking them to stop,[5] Mr. Weingrad alleges another claim of violating 47 C.F.R. § 64.1200(c). *Id.* ¶ 91.

**A. Motion to Dismiss**

DaBella moves to dismiss Plaintiff's Second Cause of Action on the grounds that there is no private right of action to enforce the caller ID regulation, 47 C.F.R. § 64.1601(e). Some federal courts, including a decision in the District of Oregon by U.S. District Judge McShane, have reached that conclusion. *See Griffin v. American-Amicable Life Ins. Co. of Tex.*, 2024 WL 4333373, at *4 (D. Or. Sept. 27, 2024). Mr. Weingrad argues, however, that a private right of action does cover the caller ID regulations, a conclusion reached by several *other* federal district courts since *Griffin*. *See, e.g.*, *Barton v. Bright Solar Mktg. LLC*, 2025 WL 2880136, at *6 (W.D. Wash. Oct. 9, 2025).[6] The Ninth Circuit has not yet resolved this issue.

**\*4** DaBella urges the Court to adopt the reasoning in *Griffin* and find that "no private right of action exists for violation of [47 C.F.R. § 64.1601(e)]." *Griffin*, 2024 WL 4333373, at *4. *Griffin* itself adopted the reasoning of *Meyer v. Capital Alliance Group*, 2017 WL 5138316 (S.D. Cal. Nov. 6, 2017), and *Worsham v. Travel Options, Inc.*, 2016 WL 4592373 (D. Md. Sept. 2, 2016). *See Griffin*, 2024 WL 4333373, at *5. Each case explained that no cause of action exists for violations of § 64.1601(e) because the regulation itself "does not expressly convey a private right of action." *See Meyer*, 2017 WL 5138316, at *16-17 ("[I]t is highly improbable that ... the FCC ... absent mindedly forgot to mention an intended private action." (cleaned up)); *Worsham*, 2016 WL 4592373, at *4 ("[T]he FCC's rule in § 64.1601(e) appears to *support* consumers' enforcement efforts under the TCPA's subsection *c*, rather than to *create* a separate mechanism upon which a consumer can make an actionable claim." (emphases in original)). DaBella argues that dismissal is appropriate because Mr. Weingrad cannot "cite to any *express* statement from the FCC indicating that Section 64.1601(e) created a private right of action." ECF 28 at 9 (emphasis in original).

"Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001).[7] Thus, Congress must create a private right to sue by statute. *Id.* at 286-87; *Logan v. U.S. Bank Nat. Ass'n*, 722 F.3d 1163, 1169 (9th Cir. 2013) ("[P]rivate rights of action, like substantive federal law itself, must be created by Congress."). Accordingly, the relevant question is not whether a *regulation* creates a private right of action—that answer will always be "no' " The appropriate question, rather, is whether the relevant statute creates, or authorizes, a private right of action under which a plaintiff can sue for violations of the statute's enabling and implementing regulations. *See, e.g.*, *Sandoval*, 532 U.S. at 284 (explaining that, because regulations "authoritatively construe" the Civil Rights Act of 1964, "[a] Congress that intends the statute to be enforced through a private cause of action intends the authoritative interpretation of the statute to be so enforced as well.").[8]

Here, Congress created a private right of action in the TCPA that allows any "person who has received more than one telephone call within any 12-month period" from "the same entity in violation of the regulations prescribed under this subsection" to sue for an injunction, money damages, or both. *See* 47 U.S.C. § 227(c)(5). Thus, there is a cause of action to sue for violations of § 64.1601(e) if the FCC enacted the regulation by its authority under § 277(c). The FCC must have promulgated § 64.1601(e) under some power granted to it by Congress through the TCPA, because "administrative agencies are entitled" to the "presumption ... that they will act properly and according to law." *FCC v. Schreiber*, 381 U.S. 279, 296 (1965); *see also Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress."). The FCC can regulate under five subsections of the TCPA:

**\*5** § 227(b)(2) authorizes the FCC to implement requirements that relate to the use of automatic telephone dialing systems[.]

§ 227(c) authorizes the FCC to promulgate rules relating to the "need to protect residential telephone subscribers' privacy rights[.]"

§ 227(d)(1)–(3) allow regulations technical and procedural standards related to fax machines, automatic telephone dialing systems, and "systems that are used to transmit any artificial or prerecorded voice message[.]"

§ 227(e)(3) provides for regulations relating to misleading or inaccurate caller ID[.]

§ 227(i) allows for the FCC to promulgate regulations to streamline information sharing with the FCC related to violations[.]

*See Dobronski II*, 773 F. Supp. 3d at 376.

The FCC must have used its authority under 47 U.S.C. § 227(c) to promulgate § 64.1601(e). Although subsection (e)(3), which concerns misleading or inaccurate caller ID, looks like the most fitting grant of authority for § 64.1601(e)'s caller ID rules, it was added to the TCPA *after* the FCC promulgated § 64.1601(e). Truth in Caller ID Act of 2009, Pub. L. No. 111-331, 124 Stat. 3572. So was subsection (i). Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, Pub. L. No. 116-105, 133 Stat. 3274, 3284 (2019).

The only viable options, therefore, are subsections (b), (c), and (d). And the only grant of authority broad enough for the FCC to have lawfully promulgated § 64.1601(e) is subsection (c). The FCC's authority under subsection (d), for example, is expressly limited to setting technical and procedural standards for "telephone facsimile machines" and "systems that are used to transmit any artificial or prerecorded voice message via telephone." See 47 U.S.C. § 227(d)(2), (3). Subsection (b)(2) similarly empowers the FCC to prescribe regulations that implement the prohibitions of the use of "automatic telephone dialing system[s]" and "artificial and prerecorded voice[s]." See id. (b)(1), (2). Through § 64.1601(e), the FCC directly regulates "[a]ny person or entity that engages in telemarketing." Thus, regulations promulgated under this subsection apply to *all* telemarketers—even if they don't use fax machines or artificial or prerecorded voice messages. Unlike subsections (b) and (d), which give limited regulatory powers based on certain technologies, subsection (c) vests in the FCC authority to promulgate any rule "need[ed] to protect residential telephone subscribers' privacy rights[.]" 47 U.S.C. § 227(c).

DaBella argues that subsection (d) "clearly encompasse[s] *technical and procedural standards*, which fall squarely into the Caller ID rules" in § 64.1601(e). ECF 28 at 9 (emphasis in original). That argument overstates both the scope of subsection (d) and the FCC's discretion thereunder. Congress proscribed the "technical and procedural standards" that the FCC must promulgate under § 227(d). See 47 U.S.C. § 227(d)(2) ("The Commission *shall* revise the regulations ... to *require* ..."); Id. § 227(d)(3) ("The Commission shall prescribe technical and procedural standards" which "shall require ..."). In so doing, Congress gave the FCC no discretion in whether or how to discharge its statutory duties. See Bailey ex rel. Est. of Bailey v. United States, 623 F.3d 855, 860 (9th Cir. 2010) ("An agency does not retain discretion whether to act where a statute or policy directs mandatory and specific action and the agency has no lawful option but to adhere to the directive."). Under subsection (d), for example, the FCC must require that any fax machine manufactured after one year after December 20, 1992, "clearly marks, in a margin at the top or bottom of each transmitted page or on the first page of each transmission, the date and time sent, an identification of the [entity]... sending the message, and the telephone number of the sending [entity]." 47 U.S.C. § 227(d)(2). The FCC's regulations on prerecorded voice messages "shall require" that

 *6 (A) all artificial or prerecorded telephone messages (i) shall, at the beginning of the message, state clearly the identity of the business, individual, or other entity initiating the call, and (ii) shall, during or after the message, state clearly the telephone number or address of such business, other entity, or individual; and

(B) any such system will automatically release the called party's line within 5 seconds of the time notification is transmitted to the system that the called party has hung up, to allow the called party's line to be used to make or receive other calls.

*Id.* § 227(d)(3). The FCC has no authorization under subsection (d) to pass other "technical or procedural standards," including the caller ID rules in § 64.1601(e).

The do-not-call alternative in § 64.1601(e) further confirms that the FCC promulgated that regulation under subsection (c). The regulation allows telemarketers to, in lieu of transmitting caller ID information, display a customer service telephone number that "must permit any individual to make a do-not-call request during regular business hours." See § 64.1601(e). Whereas subsections (b) and (d) do not address do-not-call programs, subsection (c) authorized the National Do Not Call Registry (*see* 42 U.S.C. § 227(c)(3), (4)) and expressly directed the FCC to initiate a rulemaking proceeding that considered "industry-based or company-specific 'do not call' systems ... for their effectiveness in protecting such privacy rights" (*id.* § 227(c)(1)(A)).

The FCC promulgated § 64.1601(e) through its authority under 47 U.S.C. § 277(c). Mr. Weingrad, therefore, may avail himself of the express private right of action in that section to sue for violations of § 64.1601(e). See 47 U.S.C. § 227(c)(5). The Court denies Defendant's motion to dismiss Plaintiff's Second Cause of Action. ECF 24.

**B. Motion to Strike Internal DNC Class Definition**

DaBella also argues that Mr. Weingrad's "Internal DNC Class" definition must be stricken because Mr. Weingrad is not a member of the subclass. "Courts in the Ninth Circuit routinely deny motions to dismiss or strike class allegations at the pleading stage." *Wilson v. Safeway, Inc.*, 2025 WL 2496010, at \*5 (D. Or. Aug. 29, 2025); *see also Mattson v. New Penn Fin., LLC*, 2018 WL 6735088, at \*2-3 (D. Or. Nov. 6, 2018) (denying motion to strike in TCPA action; collecting cases). That is because motions for class certification are the more appropriate vehicle for arguments about class definitions. *See Ott v. Mortg. Invs. Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046, 1062-63 (D. Or. 2014) (denying in part motion to strike class allegations in TCPA action). A court may grant a motion to strike class allegations if "the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of SW. v. Falcon*, 457 U.S. 147, 160 (1982). When a defendant moves to strike class allegations, particularly before discovery, "the defendant ... must bear the burden of proving that the class is *not* certifiable." *Bates v. Bankers Life & Cas. Co.*, 993 F. Supp. 2d 1318, 1341 (D. Or. 2014) (emphasis in original).

To represent a class under Rule 23 of the Federal Rules of Civil Procedure, the plaintiff "must be prepared to prove" that the four requirements of the Rule are satisfied: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011). Relevant here, typicality requires that the claims or defenses of the class representative be typical of the claims or defenses of the class members. *See id.* at 345. Typicality "is permissive, such that 'representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical.' " *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1117 (9th Cir. 2017) (quotations omitted) (quoting *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014)). Thus, " 'it is not necessary that all class members suffer the same injury as the class representative' to satisfy Rule 23(a)(3)." *Id.* at 1118 (quoting *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 734 (9th Cir. 2007)).

**\*7** Mr. Weingrad's proposed Internal DNC Class includes

> [a]ll persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) *two or more* telemarketing calls or text messages in a 12-month period, (3) who were not current customers of the Defendant at the time of the calls, (4) who had *previously asked for the calls to stop* and (5) within the four years prior to the filing of the Complaint.

FAC ¶ 62 (emphases added). DaBella argues that "[t]he phrase 'who had *previously* asked for the calls to stop' modifies the phrase 'two or more,' " such that "as pled, each member of Plaintiff's class, including himself, would have had to receive two or more calls *after* he requested for the calls to stop." ECF 28 at 12 (emphases in original). Thus, DaBella argues, Mr. Weingrad has failed plausibly to allege that his claims are typical of the class for two reasons: first, because Mr. Weingrad never asked DaBella to stop calling him; and second, even if Mr. Weingrad's filing of this lawsuit qualifies as "previously asking for the calls to stop," because he only received one call from DaBella after filing this lawsuit. Mr. Weingrad argues that each element of the Internal DNC Class should be read disjunctively, such that none of the elements modify the others, and that he has received at least two calls from DaBella.

Neither of DaBella's arguments justify striking the subclass. First, Mr. Weingrad alleged that he sued DaBella and, through the lawsuit, requested that the communications stop. FAC ¶¶ 37, 51. Service was executed successfully. *See* ECF 4. DaBella makes no argument that Mr. Weingrad did not, in effect, communicate with the company that he wanted the communications to stop, or that DaBella was unaware of Mr. Weingrad's desires. At the class *certification* stage, the District of Massachusetts found that a functionally identical fact pattern in a TCPA case did not present typicality problems. *See Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376, 394 (D. Mass. 2024). There, the defendant argued that the named plaintiff's claim was not typical of the proposed class's claims because the proposed class members responded to at least one of the defendant's marketing texts requesting that they stop, whereas the named plaintiff filed a lawsuit rather than responding. *See id.* at 385-87, 394-95. The court rejected that argument, reasoning that "[i]t is irrelevant, for typicality purposes" that the plaintiff was added to the class list for a different reason (suing rather than responding to the marketing texts), "if he otherwise satisfies the Class Definition." *Id.* at 394. Thus, the plaintiff who "expressed his desire for [marketing] texts to cease by suing, rather than texting back" had typical claims. *Id.* The same is true here, particularly at the *pleading* stage.

Second, DaBella's argument that Mr. Weingrad fails to allege at least two calls fails regardless of whether the Court adopts DaBella's reading of the putative class definition. Mr. Weingrad alleged that DaBella called him "at least" one

time after he filed the lawsuit. *See* FAC ¶ 38. Although he only specifically alleged that he received the September 2025 call, Mr. Weingrad adequately preserved that he received additional calls or texts after the February 2025 filing. Those communications may require discovery. The contours of any appropriate class or subclass may become clearer during certification briefing and argument. For now, DaBella has not met its burden of proving that the alleged subclass is not certifiable.

**\*8** The Court DENIES both DaBella's Motion to Dismiss and Strike, ECF 24.

**IT IS SO ORDERED.**

DATED this 23rd day of February, 2026.

**All Citations**

Slip Copy, 2026 WL 496609

**CONCLUSION**

Footnotes

1 The telemarketer must provide either the CPN (calling party number) or ANI (automatic number identification or "charge number").

2 Mr. Weingrad's February calls came from caller ID 503-298-4701, whereas his September call came from caller ID 503-838-4845. *See* FAC ¶¶ 29, 38.

3 National Do Not Call Registry Class: "All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendant or any third party acting on Defendant's behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint." FAC ¶ 62.

4 Telemarketing Caller ID Class: "All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls or text messages in a 12-month period, (3) which either (a) did not transmit a CPN or ANI at all, (b) transmitted a CPN or ANI that would not have allowed an individual to make a do not call request during regular business hours, or (c) was made without the transmission of caller identification information that included either CPN or ANI and the Defendant's or telemarketer's name, (4) within the four years prior to the filing of the Complaint." FAC ¶ 62.

5 Internal DNC Class: "All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls or text messages in a 12-month period, (3) who were not current customers of the Defendant at the time of the calls, (4) who had previously asked for the calls to stop and (5) within the four years prior to the filing of the Complaint." FAC ¶ 62.

6 *See also Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373, 380 (E.D. Mich. 2025) ("*Dobronski II*"); *Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571, 582 (E.D. Pa. 2025); *Dobronski v. CHW Grp., Inc.*, 2025 WL 2426370, at \*7 (E.D. Mich. Aug. 21, 2025); *Dobronski v. Juliasangel Mktg., LLC*, 2025 WL 2659265, at \*11 (E.D. Mich. Sept. 17, 2025).

7 *See also Price v. City of Stockton*, 390 F.3d 1105, 1112 n.6 (9th Cir. 2004) ("It is now well settled that regulations *alone* cannot create rights enforceable through either an implied right of action or Section 1983." (emphasis in original)).

8 Because the TCPA statute, not a regulation, creates a cause of action, "other TCPA regulations that the FCC has promulgated without specific reference to the existence of a private right of action have been construed to confer" a private right of action. *See Newell*, 791 F. Supp. 3d at 580 (collecting cases, including one permitting a private right of action for 47 C.F.R. § 64.1200(c)(2)). DaBella does not challenge that Mr. Weingrad has a cause of action for violations of § 64.1200(c), and that regulation does not refer to a private right of action.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.